322 So.2d 793 (1975)
SALTER BUS LINES, INC., Plaintiff and Appellant,
v.
Willard A. LEITCH, and State Farm Mutual Automobile Insurance Company, Defendants and Appellees.
No. 5144.
Court of Appeal of Louisiana, Third Circuit.
October 31, 1975.
*794 Gold, Hall, Hammill & Little by James D. Davis, Alexandria, and Holloway, Baker, Culpepper & Brunson by Herman A. Castete, Jonesboro, for plaintiff-appellant.
Gist, Methvin & Trimble by Alonzo P. Wilson, Gravel, Roy & Burnes by J. Michael Small, Alexandria, for defendants-appellees.
Before HOOD, CULPEPPER, MILLER, DOMENGEAUX and WATSON, JJ.
CULPEPPER, Judge.
This case was consolidated for trial and appeal with Martha N. Robinson et al. v. Salter Bus Lines, Inc., et al., La.App., 322 So.2d 799, and Gary A. Leitch v. Salter Bus Lines, Inc., La.App., 322 So.2d 799, in which separate decisions are being rendered by us this date. These three companion cases arise out of an intersectional collision between a bus owned by Salter Bus Lines, Inc., being driven by Sim T. LaCroix, and a Pontiac automobile owned by Willard A. Leitch and being operated by his then 17 year old minor son, Gary A. Leitch. The Robinsons were passengers in the bus. The district judge held the accident was caused solely by the negligence of the bus driver. Judgments were rendered in the three cases accordingly. All parties case have appealed.
The accident occurred in Alexandria, Louisiana at the T-intersection of U. S. Highway 71, which runs generally north and south, with Upper Third Street, which runs from the highway toward the east. It was during hours of darkness and the weather was clear.
The bus driver testified that he was proceeding on Highway 71 in a southerly direction intending to turn left on Upper Third Street. As he drove into the left turning lane on the highway, he saw the Leitch automobile on Highway 71 approaching the intersection from the south. He says that when he first saw the automobile, it was near the crest of a railroad overpass, which various witnesses testified is anywhere from 325 to 1100 feet south of the intersection. The bus driver testified he assumed he had time to make his left turn safely into Upper Third Street. He slowed down, but did not stop. Before clearing the intersection, the right rear portion of his bus was struck by the Leitch automobile, the point of impact being in the right side of the north bound lane of travel of Highway 71.
Young Leitch testified that as he came over the crest of the overpass he was going about 45 miles per hour. He saw the bus entering the left turn lane on Highway 71. The bus slowed down, and Leitch assumed it would stop to yield the right of way. Leitch says the bus did not stop, but instead turned left across his path. He immediately applied his brakes and cut to the left but was unable to stop in time to avoid striking the right rear of the bus.
*795 At the conclusion of the trial, the district judge dictated into the record the following reasons for judgment, which are amply supported by the evidence:
"My first impression when the bus driver testified was that he was guilty of negligence in making a left turn. I am still convinced of that, but from his testimony I gathered that there was going to be some proof that this boy was traveling at a highly excessive rate of speed and he said ninety miles an hour. If he had been traveling ninety miles an hour I think he would have been guilty of contributory negligence. The proof, however, is that he was traveling between forty-five and fifty miles an hour. That when he perceived the bus and saw that it was going to cross his path he applied his brakes, tried to stop and he could not. I find no negligence on behalf of Gary Leitch.
"I find that the accident was caused by the sole negligence of the bus driver.
* * * * * *
"And I cannot follow his (defendant's accident expert, Mr. Heard) reasoning that there are certain distances back where he could hit the middle of the bus but there are no distances back where he could not hit the rear of the bus. It is just not physically possible to make that determination. But I do not think his testimony can in any way help us resolve the issues in this case. I think the bus driver turned at an inopportune time. The driver of the other vehicle did not have time to stop, although he did what a reasonable prudent vehicle driver would have done under the circumstances."
The principal argument of the bus company on appeal is that during the trial young Leitch testified he was near a certain speed sign on the east side of the highway at the time he first realized the bus was going to turn left. Salter contends this shows young Leitch saw the bus turning in plenty of time to stop or avoid the accident. After the trial, counsel for the bus company had a photograph taken of this sign and measurements made to show its distance from the intersection. He attaches the photograph to his brief filed in this Court, and makes statements in his brief as to the measured distance, although admitting that these are not contained in the record. Of course, we cannot consider the photograph nor the measurements not shown by the record.
In its brief filed in this Court, the bus company requests in the alternative that we remand this case for admission of the evidence as to the distance of the speed sign from the intersection. We reject this request. It is not as clear as plaintiff suggests that Leitch said he was at the speed sign when he first saw the bus start its turn. There are several signs along the highway to which Leitch could have been referring. Furthermore, plaintiff did not ask for a rehearing to introduce this alleged new evidence. Viewed as a whole, we do not think this is a proper case for the exercise of our equitable discretion to remand.
In the present case the defendant, Willard A. Leitch, and his subrogated collision insurer, State Farm Mutual Insurance Company, filed reconventional demands for property damage to the Leitch vehicle. The district court awarded judgment on these reconventional demands against Salter Bus Lines, Inc. Having concluded, for the reasons set out above, that the accident was caused solely by the negligence of the bus driver, the judgments in favor of the plaintiffs in reconvention must be affirmed.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
Affirmed.
MILLER, J., dissents and assigns written reasons.
*796 HOOD, J., dissents for reasons assigned by MILLER, J.
MILLER, Judge (dissenting in part).
I respectfully submit the northbound motorist Leitch was negligent and his negligence was a legal cause of the accident. I agree Salter's driver was negligent and that the case should not be remanded.
Although the majority erred in stating plaintiff did not ask for a rehearing to introduce allegedly new evidence [this was listed as one ground for both applications for a new trialTr. 35 and 38], the trial court's refusal to grant the new trial is well supported in the record. At Tr. 132 Leitch cleared up his testimony concerning the signs located near his position when the bus allegedly commenced its left turn. The signs Leitch referred to were shown in exhibits S-10 and 11 (Salter's photos) and those signs were located closer to the intersection than the speedlimit sign allegedly located far from the intersection. I firmly agree the case should not be remanded.
There are a number of relevant physical facts and relative speeds established in the record which are not referred to in the majority opinion. The Salter bus is the standard Greyhound or Trailway bus of some ten years ago. It is forty feet long, chrome to a height of some six or eight feet, then red stripes and cream colored above that. The extensive lighting, standard for that type bus, was in operation before and at the time of the accident.
The bus was completing a scheduled run from El Dorado, Arkansas with Alexandria its final destination. Highway 71 is the main U.S. Highway between the two points and Third Street is the primary thoroughfare taking traffic east from 71 into Alexandria's main business district. Highway 71 has one northbound lane and one southbound lane, each of which is about 12 feet wide, but at the approaches to this intersection, a third lane is added together with several islands to permit traffic turning left off 71 and turning left onto 71 to enter without requiring traffic on 71 to stop for them.
Because of the confinement in these islands and the abrupt turn, the bus driver's and Leitch's testimony that the bus approached the turn at a slow speed must be accepted. The driver testified he had to thread his way between the islands and was in first gear. He commenced his left turn at a speed of 2 to 3 miles per hour. Tr. 52-4. The bus driver increased his speed to 10 mph to clear the intersection and was in the process of shifting to second gear when the extreme right rear of his bus was struck by the extreme right front of Leitch's automobile. The investigating officer located the point of impact as one or two feet west of the extreme right edge of the northbound Leitch's lane. Tr. 80. It is undisputed the accident would not have occurred had Leitch been four feet to his left, or had the bus moved forward four more feet.
It is important to note neither the trial judge nor the majority finds the bus maneuver to have been made faster than the driver's stated top speed of 10 mph. A careful study of the photographs of the six islands located at the intersection support the bus driver's conclusion it is difficult to make the turn at a faster speed without striking the islandsand it is undisputed the bus cleared the islands while threading its way on this occasion.
It is also important to note neither the trial court nor the majority find the northbound Leitch to have been going slower than his stated speed of 45 mph. The bus driver testified he overheard Leitch tell Bobby Brinkerhoff, a friend of his, immediately after the accident he was only doing ninety. When Bobby told him to be quiet about it, Leitch said "well, eighty or seventy, then." Tr. 56. This was not disputed, and Leitch admitted talking to Bobby after the accident. Tr. 75. Leitch also admitted Bobby was available to be called as a witness.
*797 While the investigating officer "guessed" the intersection was only 350 feet north of the overpass, 1100 feet was established as the most credible estimateand neither the trial court nor the majority found as a fact the intersection was less than 1100 feet from the overpass.
Leitch testified he was alone in his car on his way to meet a friend and remembers coming over the overpass.
Q. As you came over the overpass, did you see this bus down below?
A. Yes, sir, I seen it.
Q. All right, well, did you have any problem seeing it at all?
A. No.
Q. Was itDid it have its headlights on?
A. Yes, sir.
Q. Didn't it have a left turn signal blinking?
A. Yes, sir.
Q. And you saw the lights on top of the bus and the lights on the side?
A. Yes, sir.
Q. You saw it make it(s) left turn from Highway 71 on to Upper Third Street?
A. Uhyes, sir.
Q. Did you see that?All right, now, did you see the left turn signal of the bus on before it began its turn?
A. Yes, sir.
Q. And you actually saw the bus while it was turning?
A. Yes, sir, there for a minute.
Q. And you saw that the front part of the bus actually got on to Upper Third Street?
A. I can't recall that, Your HonorI mean, sir.
Q. All right. Well, isn't it true that the front of your car struck the extreme right rear of the bus behind the dual wheels?
A. Somewhere around that area.
Q. And wasn't it the right front of your car that struck it?
A. Yes, sir.
Quotation from Tr. 71 and 72.
* * * * * *
Q. Up until the time that you applied those brakes, had you ever slowed down before that?
A. No, sir, because the bus, when I seen him, when I come off the bridge, he was just coming into the lane or had just been in there just a minute. He wasn't to the turn yet, and I was watching him to see if he was slowing down. He looked like he was going to stop because he slowed down and was barely rolling, so I just kept on my steady speed. And then he justI got to about where there was a speed limit sign [later corrected to other signs nearer the intersection], I remember a speed limit sign or something on the right, and he pulled out and I didn't have time to stop.
Q. Are you saying you didn't have time to apply your brakes?
A. I had time to apply my brakes but (the bus) didn't give me enough distance to stop the car.
Q. Can you tell us in feet how close you were to that bus when you applied your brakes?
A. I wasn't too far from it, that's for sure.

*798 Q. When you say "not too far," do you mean a car length or two car lengths?
A. No. I wasI'd say about20 feet by the time(Interrupted)
Q. You were 20 feet when you first applied your brakes?
A. Yes, sir, by the timereaction time and everything else, it would be about 20 feet from him.
Q. And the bus was not traveling over 5 or 10 miles and hour?
A. It wasn't going very fast. I don't know how fast he was going.
Q. And you never did see (the bus) come to a complete stop?
A. No, sir.
Quotation from Tr. 74 and 75.
The investigating officer checked for skidmarks and found none leading to the point of impact. Tr. 81. Leitch went to the scene of the accident two days later and found no skidmarks on the road. Tr. 74.
There is substantial and impressive expert testimony in the record by Mr. Ray Heard, and his testimony setting forth stopping distances and feet per second travelled by cars or buses travelling at 45-50 mph and 10 mph is not disputed.
Including reaction time and time for perception, a driver traveling north on U.S. 71 at a speed of 45 mph could stop within 190 feet from the time he perceives danger. Tr. 106.
At 45 mph Leitch was travelling 66 feet per second, and at 50 mph73 feet per second. At 5 mph the bus was moving 7.35 feet per second and at 10 mph it was moving 14.7 feet per second.
After Leitch saw or should have seen the bus commence its left turn (and Leitch had been aware of the proposed left turn since cresting the overpass at least 1100 feet away), the bus moved 50 to 55 feet before its extreme right rear was struck by the extreme right front of Leitch's car.
Assuming the bus threaded its way between the islands at the highest of its estimated speeds (and the evidence is uniform the bus started its turn at a much slower speed), Leitch had at least 3.3 seconds to react. In 3.3 seconds and at 45 mph Leitch travelled 218 feetat 50 mph he travelled 241 feet before striking the rear of the bus. Had Leitch slowed before striking the bus [a possibility rejected by the trial court because of the extensive damage to Leitch's car as revealed by the photographsTr. 104], Leitch would have been slightly closer to the intersection. Also relevant here is Leitch's testimony he didn't apply brakes until twenty feet from impact, and the fact that no skidmarks were found.
The situation did not require Leitch to stop. Taking Leitch's testimony and the physical facts, he had at least 218 feet within which to slow his car sufficiently to allow the slow moving left turning bus to move forward an additional four feet. Instead Leitch plowed into the bus without substantially slowing before impact.
The trial court and the majority have rejected Heard's well documented opinion that under the physical facts and conditions established by the parties, had the bus entered the intersection at a time when Leitch could not have applied his brakes until he was 20 feet from impact, Leitch's car would have struck the front part of the bus. I respectfully submit the majority has not addressed this issue.
Since Salter's driver was negligent I would affirm the trial court judgment denying Salter's claim for damages to its bus. However, Salter is entitled to half its written subrogation claims for the amounts it paid its passengers. These claims are the subject of one of the companion suits.
I respectfully dissent from the holding that Leitch was free from negligence.