451 So.2d 649 (1984)
Stacey MEYERS, Individually and Stacey Meyers, Inc., Plaintiff-Appellee,
v.
IMPERIAL CASUALTY INDEMNITY COMPANY, Roderick L. Miller and Debaillon & Miller, Attorneys At Law, Defendants-Appellants.
No. 83-662.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1984.
*651 Bienvenu, Foster, Ryan & O'Bannon, David E. Walle, New Orleans, for defendants-appellants.
Andrus, Preis & Kraft, Gregory LaBorde, Lewis & Lolley, James Lewis, Lafayette, for plaintiff-appellee.
Before FORET, LABORDE and YELVERTON, JJ.
*652 FORET, Judge.
Alleging legal malpractice, plaintiffs, Stacey Meyers and Stacey Meyers, Inc., filed suit against defendants, Roderick L. Miller, the legal partnership of Debaillon & Miller, and their malpractice insurer, Imperial Casualty Indemnity Company. The jury rendered verdict in favor of plaintiffs, finding that defendant, Roderick L. Miller, had breached the duty of care and diligence he owed as plaintiffs' attorney. The jury found that plaintiffs had suffered damages amounting to $355,200.00, but determined that plaintiffs were 20% at fault. In accordance with the jury's apportionment of fault, the trial court entered a judgment in favor of plaintiffs for $284,160.00. Defendants appealed the judgment of the lower court and plaintiffs specified several errors in their answer to that appeal.
The issues on appeal are:
(1) Whether the jury was clearly wrong in its determination that defendant, Roderick Miller, was negligent and that his negligence was the proximate cause of the harm that plaintiffs suffered.
(2) Whether the jury's determination that plaintiff, Stacey Meyers, was 20% at fault was clearly wrong.
(3) Whether the jury abused its discretion in determining the amount of plaintiffs' damages.

FACTS
Stacey Meyers (plaintiff) undertook the construction of an apartment complex in Milton, Louisiana. This apartment complex, Country Place Apartments, included ten duplexes, nine of which contained two 2-bedroom apartments each, with the remaining one containing two 1-bedroom apartments. Located at the rear of the property was a free-standing 2-bedroom unit. Construction on the project began in 1979, with interim construction financing provided by Guaranty Bank & Trust Company of Lafayette, Louisiana. After several of the duplex units were completed, Guaranty Bank required that plaintiff secure a permanent loan commitment prior to the advancement of future interim construction funds.
Plaintiff had some difficulty attaining such financing and retained the services of Wayne Rabalais, an investment broker. Mr. Rabalais contacted the Gerhardt Agency of Mobile, Alabama, who, in turn, contacted Investment Corporation of America (ICA). ICA agreed to provide plaintiff with long-term financing, and the requested loan commitment, dated October 16, 1979, was issued.
The commitment provided for a loan of $300,000.00 at 11¾% interest per year, amortized over twenty-five years, with a ten-year call date. This loan would not have been sufficient to provide long-term financing for all of the construction debt which, by October of 1980, totalled approximately $405,000.00. As a result, plaintiff intended to finance approximately $105,000.00 of his debt through Guaranty Bank at a rate of 13½% interest per year.
The commitment specified a closing date of no later than October 31, 1980, and set out two deadlines in connection with that date. First, ninety days in advance of the closing date, the borrower had to submit a formal notice of his intention to execute the commitment. Secondly, forty-five days in advance of the closing date, the borrower had to deliver the required mortgage documentation. The first deadline was met, but the second one was missed.
In February of 1980, plaintiff had consulted Roderick L. Miller (defendant), an attorney practicing in Lafayette, regarding a title opinion needed for the loan closing with ICA. At some point in time, plaintiff also hired defendant to handle the loan closing. The exact date on which it was agreed that defendant would handle the closing is disputed by the parties. According to plaintiff, it was some time in February of 1980, while defendant maintains it was several months later.
Three letters introduced into evidence at trial help to provide a framework for the events surrounding the missed deadline. The first letter dated July 11, 1980, is from *653 defendant to ICA. This letter gives formal notice of plaintiff's intent to execute the commitment and requests closing instructions from ICA. It is clear from this letter that, by this time, defendant had been engaged to handle the loan closing with ICA. The second letter, ICA's response (to defendant's letter), dated July 28, 1980, listed the documentation that had to be provided and, without specifically mentioning the forty-five-day deadline, made reference to the paragraph of the loan commitment which contained it. The third letter dated August 4, 1980, is from defendant to plaintiff. In this letter, defendant asks for the loan commitment and encloses a copy of the July 28, 1980 letter from ICA listing the documentation needed for the closing.
On August 2, 1980, plaintiff went to defendant's office and left a message that some of the documents had been prepared. Plaintiff testified that he also left a copy of the commitment for defendant. At this point, all activity concerning the loan commitment seems to have ceased until plaintiff received a letter from ICA informing him that the commitment had expired.
It appears from the record that between the time defendant received the loan commitment and the date of its expiration, defendant did not examine it to determine what deadlines it contained. As a result, he did not know of the forty-five-day deadline until after plaintiff received the cancellation letter from ICA. For his part, plaintiff testified that he was aware of the forty-five-day deadline, although he did not know the exact date on which it fell.
After the commitment expired, defendant tried to get an extension from ICA but ICA refused to grant one. This was not surprising since by the October 31, 1980 closing date, the prime lending rate was considerably higher than the 11¾% interest rate provided for by the commitment.
As a result of the loss of the long-term loan from ICA, plaintiff had to continue using interim financing with Guaranty Bank. At the time of trial, due to difficulties in attaining a long-term loan at a suitable rate, plaintiff was still relying on this interim financing. Because of the relatively high interest paid on that loan (it averaged approximately 17.04% between October 31, 1980 and December 31, 1982), plaintiff was unable to reduce the principal amount and faced the prospect of having to pay interim interest costs until he could attain a replacement loan at some future date to finance the same amount that would have been financed by the ICA loan. All indications were that a replacement loan would have a higher interest rate and less favorable terms than the ICA loan.
In order to service the interim loan, plaintiff alleges that he had to sell several pieces of property, including his family home. Plaintiff was also unable to obtain any additional financing from Guaranty Bank because of the outstanding interim loan.
This matter was tried before a jury. The jury heard testimony from January 18, 1983, through January 21, 1983. At that point, the matter was recessed. On March 1, 1983, the jury was brought back to deliberate. On this same date, the jury rendered its verdict finding defendant liable to plaintiff for his negligence, but also finding plaintiff 20% at fault. The trial judge entered judgment in accordance with the jury's verdict.

DEFENDANT'S NEGLIGENCE
The jury found that defendant breached the duty he owed as plaintiff's attorney. This determination of the jury is entitled to great respect and should not be disturbed unless it is clearly wrong. Fisk v. Chamblee, 430 So.2d 1332 (La.App. 3 Cir.1983); Oatis v. Catalytic, Inc., 433 So.2d 328 (La.App. 3 Cir.1983); Soileau v. South Central Bell Telephone Company, 406 So.2d 182 (La.1981).
An attorney is obligated to exercise at least that degree of skill and diligence which is exercised by prudent practicing attorneys in his locality. Davis v. United Parcel Service, Inc. 427 So.2d 921 (La.App. 3 Cir.1983); Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972). An *654 attorney, appearing on behalf of plaintiff as an expert on the local practice of real estate law, testified that an attorney handling a loan closing had a duty to read the loan commitment and ascertain any deadlines contained in it. At trial, defendant testified that he did not know of the forty-five-day deadline until after it had expired. Although there was conflicting testimony as to the date on which defendant received the copy of the loan commitment, given the evidence before it, the jury could have concluded that the defendant had a copy of the commitment no later than August 12, 1980.[1] This would have been over a month before the forty-five-day deadline of September 15, 1980. Therefore, although he had a copy of the loan commitment more than a month before the forty-five-day deadline, it appears that defendant did not examine the commitment to determine what time delays it contained. It was not until plaintiff received a letter from ICA informing him that the loan commitment had expired that defendant became aware of the deadline. Defendant's failure to inspect the loan commitment and ascertain the existence of the forty-five-day deadline was clearly a breach of the duty he owed to plaintiff and constituted negligence on his part.
Defendant also breached his duty to plaintiff by failing to properly inform plaintiff regarding the loan closing. Plaintiff was responsible for gathering some of the documentation due by the forty-five-day deadline. Because defendant was unaware of the deadline, he did not inform plaintiff that this documentation was needed in advance of the deadline. This failure to inform plaintiff of the time by which the documentation had to be delivered constituted, in and of itself, negligence on defendant's part.

WAS DEFENDANT'S NEGLIGENCE THE PROXIMATE CAUSE OF PLAINTIFF'S DAMAGES?
It is not enough that defendant was negligent. An attorney is liable for the harm caused by his negligence only if the client proves that such negligence is a proximate cause of that harm. Jenkins v. St. Paul Fire & Marine Insurance Co., 393 So.2d 851 (La.App. 2 Cir.1981). An attorney's negligence would be a proximate cause or a cause-in-fact of harm to a client if the harm would not have occurred except for that negligence. If the harm would have resulted irrespective of such negligence, then that negligence is not a substantial factor or cause-in-fact. Ganey v. Beatty, 391 So.2d 545 (La.App. 3 Cir.1980); State Farm Mutual Insurance Company v. South Central Bell Telephone Company, 343 So.2d 758 (La.App. 3 Cir.1977).
In his brief, defendant argues that even if the jury did not err in finding him negligent, it erred in finding that his negligence was the proximate cause of the harm that plaintiff suffered. Defendant's argument is as follows: Plaintiff was responsible for gathering some of the documentation needed to meet the forty-five-day deadline. However, plaintiff did not provide defendant with most, if not all, of these documents until after the commitment expired. Therefore, even if defendant had been aware of the forty-five-day deadline and done everything required of him, the commitment would have nonetheless expired for want of the documentation that plaintiff was responsible for.
As discussed above, defendant was not only negligent in his initial failure to ascertain the existence of the forty-five-day deadline, but also in his failure to instruct plaintiff as to the time by which defendant needed plaintiff's documentation. Defendant's negligence in failing to inform plaintiff of the date on which defendant needed to receive the documentation was clearly the proximate cause of the expiration of the loan commitment. That plaintiff failed to deliver the documents in time for defendant to meet the deadline was the direct *655 result of defendant's omission to properly inform plaintiff as to the date by which defendant needed that documentation.
Furthermore, it is important to remember that the commitment expired, not because all of the documentation required from plaintiff was not delivered to defendant by the forty-five-day deadline, but because all the documentation was not received by ICA on that date. Although plaintiff was responsible for gathering certain documents, defendant was responsible for preparing certain others, and, in addition, defendant had undertaken the responsibility of forwarding all the necessary documentation to ICA. Defendant testified that he needed certain of the documents that plaintiff was gathering in order to draw up the documents that he was responsible for preparing. Even if plaintiff had delivered the documentation he was responsible for to defendant by the deadline, there would not have been time for defendant to finish the preparation of the necessary documents and forward everything to ICA. As a result, it is evident that defendant needed to receive the documentation from plaintiff some time before the expiration of the forty-five-day deadline if he was going to have time to finish drafting the documents and then forward everything to ICA by the September 15, 1980 deadline. If plaintiff had delivered all of the required documentation to defendant on the day of the deadline, it would have been too late. All of the documentation had to be delivered to defendant some time before that date. Only defendant could know how far in advance of the forty-five-day deadline he needed to receive the documentation from plaintiff in order to have sufficient time to meet the deadline. It fell to defendant to inform plaintiff by what date the documentation was needed. Of course, since defendant had negligently failed to ascertain the existence of the forty-five-day deadline, he did not realize that he needed the documentation before September 15, 1980, and, consequently, did not inform plaintiff of that fact. As defendant testified, until he learned that the commitment had expired, he was working under the impression that everything had to be ready for the closing date, October 31, 1980.
Accordingly, we find that the jury was correct in finding that defendant's negligence was the proximate cause of the harm which plaintiff suffered.

PLAINTIFF'S FAULT
The jury found that plaintiff was 20% at fault. We find that the jury was clearly wrong in this determination.
From the record, it is clear that the only action of plaintiff which might have been negligent was his failure to deliver, before the passing of the deadline, the documents he was responsible for. However, we do not think that this omission constitutes legal fault on plaintiff's part. Although plaintiff did know that there was a forty-five-day deadline, he did not know the exact date on which it fell. As he testified, he was relying on defendant to handle the loan closing and thought that defendant would inform him of any impending deadline. We think that plaintiff was clearly entitled to rely on defendant in this fashion.
In cases involving medical care, courts have, in effect, held that a patient has a right to rely on the skill and diligence of medical personnel. Fairchild v. Brian, 354 So.2d 675 (La.App. 1 Cir.1977); Favalora v. Aetna Casualty & Surety Company, 144 So.2d 544 (La.App. 1 Cir.1962), cert. denied, (La.1962). The situation is similar in cases involving legal services. In an attorney-client relationship, a client is entitled to rely on the expertise and diligence of his attorney. This is particularly true where, as in the present case, it is demonstrated that the client had little experience or knowledge regarding the matter which the attorney was engaged to handle. An omission or oversight by a client will not constitute legal fault where that omission is a result of the client's legitimate reliance on his attorney. In other words, in such a case, the duty of an attorney extends to the protection of his client against that client's *656 own substandard conduct[2]. In the present case, plaintiff's failure to provide most of the documentation by the deadline resulted from his legitimate reliance on defendant. The jury was clearly wrong in finding plaintiff at fault.

QUANTUM
The jury found that plaintiffs suffered damages in the following amounts:

(1) Expenses incurred with the loss of the
 original financing ....................... $ 17,200.00
(2) Interim construction interest from
 October 31, 1980 (the closing date)
 until October 31, 1982 ................... 150,000.00
(3) Future interest on the interim
 financing ................................ 20,000.00
(4) Increased cost of permanent financing 50,000.00
(5) Losses on the sale of certain real
 estate ................................... 28,000.00
(6) Loss of business opportunity ............. 40,000.00
(7) Mental anguish ........................... 50,000.00

Only the awards for expenses incurred with the loss of the original financing (No. 1) and the increased cost of permanent financing (No. 4) are not contested on appeal.
When a jury award itemizes damages, a reviewing court may review the evidence as to each element without regard to the correctness of any other element of damage. Chaney v. Our Lady of Fatima Catholic Church, 391 So.2d 501 (La.App. 3 Cir.1980); Blancher v. Samuels, 354 So.2d 213 (La.App. 4 Cir.1977), writ refused, 355 So.2d 257, 263 (La.1978). Accordingly, we will consider each of the disputed items of damages in its turn.
Before considering the specific items of damage which are at issue, we note that the trier of fact is vested with considerable discretion to fix the amount of damages. The appropriate standard of appellate review dictates that we refrain from disturbing the jury's decision on each item of damages absent an abuse of discretion.

INTERIM FINANCING FROM THE CLOSING DATE THROUGH DECEMBER 31, 1982
In its brief, defendant contends that the amount awarded for interim financing should have been the difference between the 11¾% interest rate which plaintiff would have paid under the long-term loan with ICA and the amount plaintiff actually paid from the closing date until the time of trial[3]. An examination of the evidence indicates that the jury did not award the difference between the two amounts but, rather, awarded a sum approximating the total amount of interim interest paid and accrued during this period of time. In doing so, we think that the jury acted within its discretion.
If the loan commitment had not expired, plaintiff would have begun paying off a long-term loan for the principal amount of $300,000.00, as of October 31, 1980. Because of the expiration of the loan commitment, plaintiff has had to continue to search for a long-term loan. In the meantime, he is forced to pay interest on the interim loan with Guaranty Bank. Only when plaintiff is finally successful in attaining a long-term loan, at some future date, will he be able to begin paying off this long-term loan which, because plaintiff has not been able to reduce the principal in the interim, will be for the same principal *657 amount of $300,000.00. Except for the loss of the long-term loan with ICA, plaintiff would not have had to pay interest for interim financing after October 31, 1980.
For his part, plaintiff contends that the jury's determination of the amount of this item of damage should be amended to $158,900.00, claiming that the amount of $150,000.00 was the jury's "best recollection" of the testimony of their expert regarding this element of damage. In cases of clear clerical errors, an appellate court is empowered to make appropriate adjustments in a jury's verdict. LSA-C.C.P. Article 2164; Woods v. Ratliff, 407 So.2d 1375 (La.App. 3 Cir.1981). However, we do not think that this is such a case.
Even if we accept plaintiff's contention that his proof as to the interest paid and accrued on the interim loan from the date of closing through December 31, 1982, was clear and convincing to the point that it was an abuse of discretion for the jury not to accept the figure given by their expert as the cost of the interim financing, we would still not consider that the jury was bound to have awarded that amount in damages. The question of the exact cost of the interim financing is not the only question which the jury had to decide in order to determine the amount of this item of damages. They also had to determine that defendant's negligence proximately caused this cost. Jenkins v. St. Paul Fire & Marine Insurance Co., supra. The record provides support for the conclusion that all the costs of this interim financing was not causily related to defendant's negligence. Even if plaintiff had been able to attain the long-term loan with ICA, he still would have had to finance approximately $105,000.00 of the construction debt with Guaranty Bank. This amount was to have been financed at a rate of approximately 13½% per year. The interim finance cost as testified to by defendant's expert included the cost of financing this $105,000.00. Taking this into account, the jury might well have concluded that not all of the costs of the interim financing was a result of the loss of the loan with ICA, but would have been paid in one form or another even if the long-term loan would not have been lost. The jury did not abuse its discretion in setting the amount for this item of damages at $150,000.00.

FUTURE INTERIM INTEREST
Plaintiff contends that the jury's award for future interest on the interim financing should be increased because plaintiff has not attained permanent financing during the pendency of this appeal, and has been forced to continue financing the debt with the interim loan. Plaintiff speculates that, in making this award, the jury did not contemplate that plaintiff would have to continue with the interim financing for such a long period of time. In his brief, plaintiff asks this Court to grant him an open-ended judgment regarding this element of damage. We decline to do so.
At the outset, we note that plaintiff bases his argument on speculation as to what the jury intended when it determined the amount of this element of damage. Even if we accept plaintiff's theory that he is entitled to an open-ended judgment, we would be reluctant to engage in such speculation. As it is, we find that plaintiff's request for an increase in the award must be rejected, regardless of whether the jury's determination made on the basis of evidence elicited at trial has been borne out by subsequent events. The reasonableness of the jury's determination should be judged in light of the evidence in the record, and that evidence amply supports the jury's finding.
Any evidence regarding plaintiff's continued failure to attain permanent financing is not properly before this Court. Except where facts subsequent to trial are not disputed and admitted, the general rule is that a court of appeal has no jurisdiction to review new evidence. Absent a joint stipulation of facts, such new evidence may not be considered. Salter Bus Lines, Inc. v. Leitch, 322 So.2d 793 (La.App. 3 Cir. 1975); Leger v. Delano Plantation, Inc., 352 So.2d 743 (La.App. 3 Cir.1977), writ *658 refused, 354 So.2d 211 (La.1978). There being no joint stipulation as to plaintiff's continued use of the interim financing, any evidence of that fact may not be considered by us. We will not disturb the jury's determination as to this element of damages.

LOST BUSINESS OPPORTUNITY
Defendant maintains that the jury erred in awarding damages for lost business opportunity. We agree, feeling that this element of damage was purely conjectural.
Although there was testimony to the effect that plaintiff had discussed developing a piece of property with a banker, there was no evidence indicating that this development was likely to occur in the foreseeable future. Plaintiff admitted that he had no cost estimates nor plans. Evidence elicited at trial indicated that there had been a severe slowdown in the construction trade and that many builders had stopped building altogether. Additionally, plaintiff presented no evidence indicating what profits he might have expected from any future project if he had, in fact, been able to undertake one.
Given the evidence concerning the building slowdown and the total lack of evidence concerning what plaintiff might have earned from any anticipated construction project, we find that any damages resulting from loss of business opportunity were purely conjectural. Loss profits resulting from an offense or quasi offense must be proven with a reasonable certainty, and damages which are purely conjectural will not be allowed. Smith v. White, 411 So.2d 731 (La.App. 3 Cir.1982), writ denied, 413 So.2d 508 (La.1982); Coco v. Richland General Contractors, Inc., 411 So.2d 1260 (La.1982), writ denied, 413 So.2d 909 (La.1982). The burden of proving the existence of damages and the causal connection between them and the delictual act rests with the plaintiff. Such proof must be shown by a preponderance of the evidence. A mere possibility is not sufficient. Coco v. Richland General Contractors, Inc., supra. In the present case, plaintiff did not carry his burden of proof. The jury was clearly wrong in awarding damages for lost business opportunity.

LOSSES ON THE SALE OF CERTAIN REAL ESTATE
The jury found that plaintiff suffered financial losses from the sale of certain real estate which he was forced to sell as a result of loss of the long-term loan with ICA. We feel that the jury was wrong in awarding this item of damage because the plaintiff did not carry his burden of proof to show that the loss of the long-term loan proximately caused any of the financial loss suffered by plaintiff as a result of the sale of real estate.
As we stated above, the burden of proving a causal connection between damages and the negligent acts of defendant rests with the plaintiff. The mere possibility that the damages were caused by the negligence of the defendant is not enough. In the present case, although an expert real estate appraiser testified in plaintiff's behalf concerning plaintiff's losses on the sale of real estate, there was little evidence to connect those losses with the loss of the long-term loan. In one attempt to make such a connection, plaintiff testified that lost business opportunity was one of the causes of the financial difficulties which necessitated the sale of the real estate. As we concluded above, plaintiff failed to demonstrate that the loss of business opportunity was a result of a loss of the long-term loan with ICA. Therefore, establishing a causal connection between the sale of the real estate and lost business opportunity fails to establish any causal connection between the sale of real estate and the loss of the long-term loan.
Furthermore, we again note the testimony of plaintiff and his wife that the construction industry suffered a severe slowdown in the period following the closing date of October 31, 1980. It seems probable that plaintiff was forced to sell the real estate, not as a result of the loss of the loan, but as a result of the declining demand in the construction industry. Accordingly, *659 we find that it was error for the jury to award plaintiff this element of damage.

MENTAL ANGUISH
The last element of damage which this Court must consider is the jury's award for mental anguish. Defendant points out that there is a paucity of evidence concerning any mental distress suffered by plaintiff. In this regard, we note that plaintiff did not testify about any mental distress he suffered. The only direct evidence concerning plaintiff's mental anguish was given by plaintiff's wife, whose testimony was as follows:
"Q How has it affected him?
A For him to be able not to provide for his family?
Q Yes, ma'am.
A Well, it'smentally, it's affected him a lot because he was always the type that wanted to give us everything hehe could. Everything we wanted, he tried to provide for us; and it's put a strain on him, as well as the family."
Although mental anguish is by its nature difficult to prove, an award for it must be supported by the evidence. Gele v. Markey, 387 So.2d 1162 (La.1980); Hayden v. Soule, 271 So.2d 264 (La.App. 4 Cir.1972); McKowen v. McCraine, 244 So.2d 45 (La.App. 1 Cir.1971). In Gele, the Supreme Court found the evidence failed to establish mental anguish where one of the plaintiffs simply testified that she and her husband were distraught over a ceiling collapse, but did not attempt to explain their mental states. In the instant case, there is the same lack of any attempt at explaining plaintiff's mental state.
Although it might be assumed that plaintiff suffered some mental anguish given the situation, the burden was on plaintiff to come forth with some proof. Plaintiff could have testified about any mental anguish he had suffered. He did not. Given the paucity of evidence regarding mental anguish, we feel that plaintiff clearly did not prove this element of damage. The jury's award for this element of damage is reversed.

DECREE
For the foregoing reasons,
IT IS ORDERED, ADJUDGED AND DECREED that the judgment of the district court be amended as follows:
That portion of the judgment awarding damages to plaintiffs, Stacey Meyers and Stacey Meyers, Inc., in the amount of $284,160.00 is amended to decrease that award to $237,200.00.
In all other respects, the judgment of the trial court is affirmed.
Costs of this appeal are assessed, one-half against plaintiffs and one-half against defendants.
AFFIRMED AS AMENDED.
NOTES
[1] There was also testimony indicating that plaintiff gave defendant a copy of the commitment as early as February of 1980.
[2] Both the First and Second Circuits, in adopting Professor Johnson's analysis of the effect of comparative negligence on Louisiana tort law (see "Comparative Negligence and the Duty/Risk Analysis", 40 La.L.Rev. 319 (1980)), have stated that tort cases fall into three broad categories. One of those categories is that in which defendant's duty extends to the protection of a plaintiff against his own carelessness. In such a case, contributory negligence and, therefore, comparative negligence, is inapplicable. Dulaney v. Travelers Insurance Co., 434 So.2d 578 (La.App. 1 Cir.1983); Frain v. State Farm Insurance Co., 421 So.2d 1169 (La.App. 2 Cir.1982).
[3] In his brief, defendant cites as authority for this contention a case decided by the North Carolina Supreme Court, Pipkin v. Thomas & Hill, Inc., 298 N.C. 278, 258 S.E.2d 778 (1979). While this case does support defendant's contention, we decline to follow example of the North Carolina Supreme Court, feeling that their method of calculating damages does not fully compensate the plaintiff for his losses.