DOMENGEAUX, Judge.
The plaintiff, Marie Girouard LeBlanc, sued defendant, Wal-Mart Stores, Inc. (Wal-Mart), for her injuries and medical expenses that resulted from a slip and fall in the Wal-Mart store in St. Martinville, Louisiana. From a District Court’s ruling in favor of the plaintiff awarding her Twenty-Five Thousand and 00/ioo Dollars ($25,000.00) in general damages, and Two Thousand Three Hundred Sixteen and 28/ioo Dollars ($2,316.23) in special damages/medical expenses, Wal-Mart has appealed and assigned three assignments of error.
1. The Trial Court erred in finding that the plaintiff proved by a preponderance of the evidence a causal connection between the accident and (a) the plaintiff’s injuries suffered after November 16,1984, and (b) the damages to the plaintiff’s dentures.
2. The Trial Court’s award of Twenty-five Thousand and °°/ioo Dollars ($25,-000.00) in general damages was excessive.
3. The Trial Court’s award of Two Thousand Three Hundred Sixteen and 23/ioo Dollars ($2,316.23) in special damages/medical expenses was excessive.
FACTS
On September 28, 1984, plaintiff, Marie LeBlanc, then sixty-five years old, slipped and fell while shopping in Wal-Mart in St. Martinville, Louisiana. Eyewitness testimony and the plaintiff’s own testimony indicated that while the plaintiff was proceeding down the “household cleaners” aisle, she slipped on a two to three inch puddle of liquid detergent, landed on her back and hit her head on the floor.
Since the plaintiff was disoriented and could not stand, she was .taken by ambulance to the St. Martin Infirmary and was treated by Dr. Kenneth Fournet. Dr. *1336 Fournet’s notes indicated that upon admission, the plaintiff was experiencing back pain and a sore throat. An x-ray of the plaintiffs back showed two old partial compression fractures at the T-8 and T-12 level that had been diagnosed a year earlier but were believed to have been even older. Mrs. LeBlanc testified that when she awoke in the Infirmary on the next day, she found her dentures broken in her dress pocket. By the second day, the plaintiffs back pain appeared to have subsided but her respiratory infection had worsened. She awoke on the third day disoriented and unable to recognize familiar faces. Dr. Foumet ordered a CT scan to determine whether she had possibly injured her head in the fall. The results of the test were normal. On October 3, 1984, the fifth day, Mrs. LeBlanc was discharged. Dr. Four-net’s records noted that the plaintiff was free from pain upon her release.
■Mrs. LeBlanc had a history of back ailments dating from 1977. As stated previously, the preceding year, 1983, Mrs. Le-Blanc was diagnosed as having two partial compression fractures on the T-8 and T-12 level. In 1981, after the plaintiff fell in her yard, she was admitted to the St. Martin Infirmary for viral gastroenteritis and lumbar muscle strain. In 1978, she was diagnosed as having severe post-traumatic low back pain and was put into pelvic traction. In 1977, she was admitted to the St. Martin Infirmary with back pain after she fell in the street. Additionally, Mrs. LeBlanc suffered from arthritis and osteoporosis, a degenerative bone disease.
Subsequent to her five day stay in the St. Martin Infirmary after her fall in Wal-Mart, Mrs. LeBlanc saw Dr. George Cousin, complaining of back pain which she attributed to the Wal-Mart accident. Dr. Cousin first examined Mrs. LeBlanc on October 16, 1984, but could find no objective findings of the cause of the pain. However, he stated that he did believe she was in pain. She was placed on anti-inflam-atory and pain medication. Thereafter, Dr. Cousin reviewed the plaintiff’s 1983 x-rays and noted the two compression fractures. When the plaintiff saw Dr. Cousin again on October 19, 1984, she felt better but still had some spasm pain upon movement. He recommended that she continue the pain medication, rest until the pain subsided, and return in a month. When next seen on November 16, 1984, the plaintiff stated that she had some mild back pain and sinus congestion. At this point Dr. Cousin testified in his deposition that he felt that her back problem had resolved itself and that, up until this point, her back pain was more likely than not attributable to the fall in Wal-Mart.
One month later, on December 14, 1984, Mrs. LeBlanc again saw Dr. Cousin complaining of back “spasms on her left side when she slept the wrong way”. After finding point tenderness in the left spine area around the T-10 to T-12 area, but no actual muscle spasm, Dr. Cousin injected cortisone into the area in pain. Mrs. Le-Blanc also had new pain in the spinal column itself. Dr: Cousin diagnosed her as having facet joint syndrome, a situation whereby the facet joints in her vertebrae had become dislocated which caused pain. As of this date, December 14, 1984, Dr. Cousin testified that the pain Mrs. LeBlanc was experiencing could have been aggravated by the Wal-Mart fall, but it could just as easily have been caused by her previously existing physical condition which predisposed her to experience back pain.
Mrs. LeBlanc next saw Dr. Cousin on February 6,1985, complaining of chest pain and arthritis for which he prescribed medication. The plaintiff did not complain of back pain on this visit. The plaintiff was seen again on July 15, 1985, with eye conjunctivitis and an upper respiratory infection. On July 19, 1985, the plaintiff returned complaining of a worsened eye infection, along with a sore back and an inability to stand with her eyes closed. Physical examination found “very minimal tenderness” in her back. Dr. Cousin stated that this back pain was most probably related to a degeneration of certain nerve pathways that were the result of a vitamin deficiency and a compression syndrome and were probably not related to her fall in Wal-Mart.
*1337 On July 24, 1985, Mrs. LeBlanc was admitted to Dauterive Hospital with weakness on her left side, indicating a possible stroke. The pain subsided within twenty-four hours and she was discharged on the following day. She was diagnosed as having degenerative arthritis, a thoracic spine with acute pain, and atherosclerotic cardiovascular disease. Again, none of these conditions could be attributed to the fall in Wal-Mart in September, 1984. Mrs. Le-Blanc also had a urinary tract infection in July of 1985, and underwent blood work on August 30, 1985; again, neither of which were related to the fall.
In February, 1986, the plaintiff was in an auto accident whereby she suffered a neck sprain, a contusion on the chest wall and a concussion without a coma. The following April, 1986, the plaintiff saw Dr. Fournet for pain between her shoulder blades from the thoracic to the cervical spine. Upon examination Dr. Fournet found some tenderness but no evidence of increased disability as the plaintiff looked, walked and moved well. Again, Dr. Fournet could not attribute this pain to the fall in September, 1984, particularly in light of the plaintiff’s other physical problems and the car accident.
The plaintiff also sued for the damages to her dentures which she claimed were broken when she fell in Wal-Mart. Mrs. LeBlanc could not remember the events immediately following the accident. She stated that when she awoke in the St. Martin Infirmary on the day after her fall, she found her dentures in her pocket, broken. Elmore F. Bonin, D.D.S., testified that while the plaintiff's dentures were broken beyond repair, the plaintiff was already in need of a new pair of dentures as the old dentures no longer fit her receded gums. A new pair of dentures would cost an estimated Seven Hundred Fifty and 00/ioo Dollars ($750.00).
The Trial Court found that the plaintiff had proven by a preponderance of the evidence that Wal-Mart was liable to the plaintiff for her injuries due to the slip and fall in September, 1984. The Court awarded the plaintiff Twenty-five Thousand and 00/ioo Dollars ($25,000.00) in general damages and Two Thousand Three Hundred Sixteen and 23/ioo ($2,316.23) Dollars in special damages/medical expenses which included the medical expenses incurred in December, 1984, and the cost of a new pair of dentures.
EXCESSIVENESS OF THE AWARD
The defendant has not appealed the Trial Judge’s ruling that they are liable for the plaintiff’s pain, suffering and medical expenses up until and including November, 1984. The defendant concedes that there is sufficient evidence in the record upon which the Trial Judge could have based such a ruling. The defendant appeals that portion of the ruling which holds the defendant liable for the plaintiff’s back pain and suffering and medical expenses suffered after November, 1984; in particular, the medical expenses from December, 1984, and the amount in general damages which represents the plaintiff’s back pain and suffering from and including December, 1984,-until the time of trial. The defendant contends that the plaintiff did not prove by a preponderance of the evidence a causal connection between this latter pain and suffering and the September, 1984, fall in Wal-Mart. The defendant also contends that the plaintiff did not prove by a preponderance of the evidence a causal connection between the fall and the plaintiff’s damaged dentures and accordingly appeals the award of Seven Hundred Fifty and °%oo Dollars ($750.00) in estimated replacement costs. Based on the aforementioned arguments, defendant contends that the general damage award of Twenty-five Thousand and °°/ioo Dollars ($25,000.00) and the special damages/medical expenses of Two Thousand Three Hundred Sixteen and 23/ioo Dollars ($2,316.23) constitutes manifest abuse of the Trial Judge’s discretion and should be reduced.
The burden of proving the existence of damages and a causal connection between them and the delictual act rests with the plaintiff seeking damages; such proof must be shown by a preponderance of the evidence, and a mere possibility is not suffi- *1338 dent. Meyers v. Imperial Cas. Indem. Co., 451 So.2d 649 (La.App. 3rd Cir.1984). The trier of fact’s determination as to causation is entitled to great weight and cannot be disturbed absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Grappe v. State, Dept, of Transp. and Dev., 462 So.2d 1337 (La.App. 3rd Cir.), writ denied, 466 So.2d 1302 (La. 1985).
At the trial, the plaintiff, her daughter and her friend testified as to the extent of the plaintiff’s damages. The plaintiff is less active, can no longer work in her garden, go dancing or fishing or even fold sheets easily. In lieu of their testifying at trial, the depositions of Dr. Cousin and Dr. Fournet were introduced into evidence. Their testimony is the only evidence that would tend to establish a causal connection between the plaintiff’s subsequent back pain and the fall in September, 1984. The plaintiff’s primary treating physician after her five (5) day stay in the St. Martin Infirmary was Dr. Cousin. When questioned on the causal connection between the plaintiff’s back pain and the fall in Wal-Mart the following colloquy occurred:
Q. Were you — when you saw her on her first visit in October — October 16, when you saw her again on the 19th, and then you saw her again on November 16, would you have related the complaints of those three office visits within a reasonable medical probability to her slip and fall — her alleged slip and fall in September?
A. Yes. You could do that with a reasonable probability.
Q. But as far as her complaints for December, you cannot. Is that correct?
A. I can’t really say you can’t relate them.
Q. Would you say within any reasonable medical probability that her complaints of December visit 1984 were related to her alleged slip and fall accident in September?
A. At that time, you probably couldn’t.
Q. Could not?
A. Right. At that time.
Q. Can you at any other time?
A. With this particular visit on December 14, the pain that she had probably — the pain that she had on December 14, ’84 even today may not have been related. I can’t say probably was not related, but I can only say may not have been related to the accident.
Q. Well, can you say it was related is what I want to know?
A. No.
Q. Within a reasonable medical probability, was it?
A. No, you can’t. You can’t say that the pain at that time was related on December 14, ’84 based on the notes.
Q. You gave her a shot of cortisone on December 16?
A. 14.
Q. 14, ’84 and then told her just to come back as needed. You didn’t restrict her activities or anything like that?
A. No.
Q. From some of the comments you’ve made — and please correct me if I’m not right — if I’m wrong — I get the impression that you believe since she had a compression fracture back in 1983, since that time, she would be susceptible to having back pain off and on the rest of her life?
A. Certainly.
Q. Even without any intermittent “accident”?
A. Right.
(TT. 246-248) (emphasis added).
Later Dr. Cousin further explained:
Q. Can you say with absolute, positive certainty that there is no relation whatsoever between the fall at Wal-Mart and the subsequent thoracic pain?
A. All right. Can I say with absolute, positive certainty that there is no relation between the subsequent pain—
Q. After November of ’84?
A. After November of ’84 and the fall.
Q. Right?
*1339 A. That she sustained at Wal-Mart? No.
Q. So you can’t be certain that it was caused by the fall at Wal-Mart, but you can’t be certain that the pain is being caused — is not being caused by the fall at Wal-Mart. Is that correct?
A. That’s correct.
Q. Would you explain then those last two answers?
A. Ms. LeBlanc has a chronic condition involving her thoracic spine which is well documented and very clear. She has two compression fractures dating back to 1983 and evidence of osteoporosis. This is a condition which will cause one to be prone to recurrent back pain and anything — if something can aggravate it — if something occurs that aggravates the pain, it may cause her — it may cause this condition to cause her more discomfort. I can’t say with certainty that the pain actually — the pain suffered after November of ’84 was not related to the fall because the fall could have aggravated a pre-existing condition that she had that may not have been aggravated had she not fallen. On the other hand, I can’t say that if she had never had the accident, that she would not have had pain, because she certainly had a condition which is prone to cause pain in people similar to this type. Does that answer your question?
(TT. 269-270) (emphasis added).
Throughout his deposition when repeatedly asked whether he could relate the plaintiff’s back pain occurring from December, 1984, until the present to the September, 1984, Wal-Mart accident, Dr. Cousin could only say that the December, 1984, pain could possibly have been caused or aggravated by the fall but he could not say that it had probably been caused or aggravated by it. Additionally, Dr. Cousin stated that any back pain the plaintiff experienced after December, 1984, was probably not related to the fall in Wal-Mart.
Dr. Fournet saw the plaintiff during her five (5) day stay in the St. Martin Infirmary in September, 1984, and did not see her again until July, 1985, and then later in April, 1986. When asked whether he could relate Mrs. LeBlanc’s present back pain to her fall in Wal-Mart in September, 1984, he stated:
Q. Once again, considering her entire history which you have demonstrated that you know, and including the history which she gave you both in September of 1984, and as recent as yesterday, April 15, 1984,(sic) and assuming further that since September of 1984, Mrs. LeBlanc has had recurring pain in the mid back region for which she has sought medical assistance, and again assuming that she had not experienced any pain after May of 1983, after she had recovered from that episode which you had hospitalized her for, can you give us an opinion as to whether her present back pain — mid back pain complaints are probably related to this slip and fall reported in September of 1984?
A. ... — whether or not I relate this pain yesterday to — if I can relate the pain yesterday to the fall. It’s absolutely impossible for me to make an absolute connection. She related it to it, but I cannot.
Q. But, my question is: Is it probably that, assuming that she had no pain prior to the Wal-Mart fall—
A. I would say possible, but not probable.
[[Image here]]
I would have had to see her and had more opportunity to relate it. I — You are asking me to answer a question that I cannot answer.
(TT. 182-183)
In order to be probative, medical evidence must meet the standard of proof of the “more probable than not” of its existence. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972); Walker v. Marcev, 427 So.2d 678 (La.App. 4th Cir.), writ denied, 433 So.2d 182 (La.1983). Testimony that an accident is a “possible” explanation for an injury or that the accident “could” be an explanation *1340 for the injury does not meet the standard of “more probable than not”. Walker v. Marcev, supra.
Clearly the testimony of these two physicians fails to establish that it was more probable than not that Mrs. LeBlanc’s back pain from December, 1984, until the present was caused or aggravated by her fall in Wal-Mart in September, 1984. Numerous other reasons existed that could have accounted for her prolonged back pain, including her two compression fractures, the osteoporosis, the arthritis, her numerous other falls and the subsequent auto accident. Due to the lack of medical testimony establishing a causal connection between Mrs. LeBlanc’s subsequent back pain and her fall in Wal-Mart, we find that the Trial Court’s ruling that the plaintiff proved by a preponderance of the evidence that her back pain subsequent to and including her medical exam in December, 1984, was caused by the fall in Wal-Mart, was manifest error. Hence, we are compelled to reduce that portion of the judgment which compensates the plaintiff for her pain and suffering and medical expenses for back ailments from December, 1984, until the trial.
Before a Court of Appeal can disturb a quantum award made by the Trial Court, the record must clearly reveal that the trier of fact abused its discretion in making its award; only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award and then only to the extent of lowering it or raising it to the highest or lowest point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The Trial Court awarded the plaintiff Twenty-five Thousand and 00/ioo Dollars ($25,000.00) in general damages and Two Thousand Three Hundred Sixteen and 23/ioo Dollars ($2,316.23) in special damages/medical expenses. We find that the absolute highest general damage award reasonably within the Trial Court’s discretion for the plaintiff’s pain and suffering from September 28, 1984, until November 16, 1984, was Ten Thousand and °°/ioo Dollars ($10,000.00). Additionally, expenses of Fifty and °°/ioo Dollars ($50.00) for medical expenses on December 7, 1984, and December 14, 1984, shall be deducted from the award of medical expenses.
The plaintiff testified that she awoke in her hospital bed with her dentures in her pocket, broken in half. Also, Mrs. Rickey Montet, an eyewitness to the plaintiff’s accident in Wal-Mart, testified that after the plaintiff fell, the plaintiff was “kinda ‘just jabbering’. And then she said—she asked for her teeth. And I couldn’t understand what she was saying. And she was saying something about just teeth.” This testimony supports Mrs. Le-Blanc’s assertion that her dentures were probably damaged during the fall in Wal-Mart. We find no manifest abuse in the Trial Judge’s ruling that the plaintiff proved that it was more probable than not that her dentures were damaged beyond repair in the fall. Hence, we affirm that part of the judgment awarding replacement costs for the dentures.
For the foregoing reasons the ruling of the District Court awarding Twenty-five Thousand and °%oo Dollars ($25,000.00) in general damages is reduced to Ten Thousand and °°/ioo Dollars ($10,000.00), and the amount awarding Two Thousand Three Hundred Sixteen and 28/ioo Dollars ($2,316.23) in special damages/medical expenses is reduced to Two Thousand Two Hundred Sixty-six and 23/ioo Dollars ($2,266.23). The judgment is otherwise affirmed.
Costs on appeal are assessed one-half to plaintiff-appellee and one-half to defendant-appellant.
AFFIRMED AS AMENDED.