ARMSTRONG, Judge.
The plaintiff alleges that the defendants wrongfully failed to effect a tax shelter investment for him and failed to timely inform him that his tax shelter investment would not be effected. The plaintiff advances theories of negligent misrepresentation, breach of contract, “detrimental reliance”, and “simple” negligence. The trial court granted summary judgment for the defendants as to all of the plaintiff's theories and the plaintiff appeals. We affirm the trial court’s judgment as to all of the plaintiff's theories except “simple” negligence. Because we find that there are genuine issues of material fact as to whether the defendants were negligent, we reverse and remand for further proceedings on the “simple” negligence theory.
I.
The plaintiff is Reuben S. Roy (“Roy”). The defendants are Gayle S. Dellinger (“Dellinger”) and her employer, Prudential-Bache Securities, Inc. (“Prudential”). Prudential is a securities broker-dealer and Dellinger is an “account representative” employed by Prudential in its New Orleans office.[1]
In December 1984, Roy was advised by his accountant, William R. Legier (“Legier”), that it would be advantageous for Roy to invest in a tax shelter. Apparently, in order to obtain the desired tax benefit, it was necessary that Roy make the investment before the end of 1984. Legier contacted Dellinger on December 21, 1984 to inquire about a tax shelter for Roy. Del-linger supplied Legier with written information on a tax shelter known as the “1984 Polaris Aircraft Trust X”. Applications to invest in the Polaris Trust had to be made by completing the questionnaire portion of a “subscription agreement” form and submitting it with a tendered check for the amount of the investment to Prudential. The subscription agreement form stated that such applications to invest were subject to approval. The subscription agreement also stated that the Polaris tax shelter program could close at any time up until December 31, 1984. Apparently, the approval had to be done in Prudential’s New York office.
The next day, December 22, 1984, Legier again contacted Dellinger and discussed *495 the Polaris program as a possible tax shelter investment for Roy. However, at that time, Legier and/or Roy still had not definitely decided that Roy wished to invest in the Polaris tax shelter program and no check or completed subscription form was submitted by or for Roy on December 22, 1984.
On Friday, December 28, 1984, Legier told Dellinger that Roy wished to participate in the Polaris Tax Shelter. That same Friday, Dellinger went to the office of Roy’s secretary/bookeeper and picked up Roy’s check for $11,000.00 and a subscription agreement form which had been completed by Roy and Legier. Also that same Friday, Dellinger sent Roy’s cheek and completed subscription agreement form to Prudential’s New York office by air express mail for delivery on Monday, December 31, 1984, the next working day. Unfortunately for Roy, there was a special closing for the Polaris tax shelter program in New York on Sunday, December 30, 1984, because the program was “oversubscribed”. Dellinger learned on Wednesday, January 2, 1985 that Roy’s Polaris application had been rejected.
II.
Roy argues that there is a genuine issue of material fact as to representations made by Dellinger about the availability of the Polaris tax shelter. In particular, Roy alleges that on Friday, December 28, 1984, Legier asked Dellinger whether there would be any problem with Roy’s Polaris investment and that Dellinger replied that the Polaris tax shelter was still available and that there would be no problem. Roy bases his claims for negligent misrepresentation, breach of contract, and “detrimental reliance” on that alleged conversation between Legier and Dellinger on December 28, 1984. However, we will not consider that alleged conversation because the occu-rence of any such conversation is denied by an affidavit of Dellinger and Roy relies solely on hearsay to rebut Dellinger’s affidavit.
Dellinger’s affidavit discusses the events of December 28, 1984 but does not mention any conversation with Legier such as Roy alleges. More importantly, Dellinger’s affidavit states that “at no time did she ever promise, warrant, or represent” that Roy’s Polaris application would be approved. The allegations of Roy’s petition are verified under oath by Roy. Therefore, we will consider Roy’s petition as if it were an affidavit by Roy. However, the verified allegations of the petition are as to a conversation between Dellinger and Legier and the petition does not indicate that Roy was a party to the conversation. Thus, the allegations of the petition as to the conversation between Dellinger and Legier, even though treated as an affidavit of Roy, are hearsay and therefore insufficient to rebut Dellinger’s affidavit or to raise a genuine issue of fact. Hearsay statements in affidavits, which would be inadmissible at trial, may not be relied upon to oppose (or support) a motion for summary judgment. La. Code Civ.Proc. art. 967; See Charles v. Faust, 487 So.2d 612, 613 (La.App. 4th Cir.1986). Thus, we must affirm the district court’s summary judgment dismissing Roy’s claims for negligent misrepresentation, breach of contract, and “detrimental reliance”.
III.
Roy’s claim for “simple” negligence is based, not upon any alleged statement by Dellinger, but upon Dellinger’s alleged negligence in not acting reasonably to effect Roy’s Polaris investment and/or in not checking on the availability of the Polaris tax shelter and the status of Roy’s investment application in time for Roy to make a different tax shelter investment for 1984. There is no indication in Dellinger’s affidavit that she telephoned Prudential’s New York office on December 28, 1984 to check on the availability of the Polaris tax shelter. Nor does the Dellinger affidavit indicate what the results of such a telephone inquiry would have been. Similarly, there is no indication in Dellinger’s affidavit that she telephoned Prudential’s New York office on December 31, 1984 to check on the status of Roy’s Polaris investment. Roy argues that, if Dellinger had made such telephone calls, and had told Legier or Roy *496 of the problem with Roy’s investment prior to January 1, 1985, then Roy could have invested in some other tax shelter for 1984. Because Dellinger’s affidavit does not deal with this negligence theory, and the circumstances give it some plausibility, we find that it creates a genuine issue of material fact. We do not hold that the failure of Dellinger to telephone Prudential’s New York office on December 28, and/or 31, 1984 necessarily constitutes negligence— we merely hold that there is a genuine issue of fact as to such negligence. As a securities broker acting for a customer, Dellinger had some duty of care toward Roy. Cf. Meyers v. Imperial Casualty Indemnity Co., 451 So.2d 649, 654 (La.App. 3rd Cir.1984) (attorney’s failure to inform client of loan closing deadline, when he knew about it); La.Civ.Code arts. 3017-3018 (broker similar to mandatory and liable for damages caused through his own fault). The issue is what a reasonable prudent securities broker would have done under the same or similar circumstances. Expert testimony on this point might be appropriate.[2]
Of course, even if Dellinger was negligent, liability does not result unless Roy proves causation and damages. For example, it is not clear from the record whether telephone calls to Prudential’s New York office on December 28, and/or 31, 1984 would have alerted Dellinger to the fact that Roy’s Polaris investment would face difficulty. Nor does the record reflect clearly whether Roy could have invested in some other tax shelter before the end of 1984. Presumably, the damages suffered by Roy would be the tax benefits lost as a result of not investing in 1984 in some tax shelter other than Polaris but, again, this is not wholly clear from the record.
Dellinger and Prudential argue that Roy and Legier waited until December 28, the second-to-last regular business day of 1984, to decide to invest in the Polaris tax shelter. The defendants also point out that the Polaris subscription form states that the Polaris program could close at any time up until December 31, 1984. Those facts are undisputed and the defendants may well take the position on remand that Legier and/or Roy were wholly or partially at fault. However, it is also clear that Del-linger also was aware of the date, the need to make the tax shelter investment during 1984, and the risk that the Polaris program would close. Dellinger’s affidavit states that she warned Legier on December 22, 1984 that tax shelters sold out quickly, especially in December. Although this would have tended to put Legier on notice as to the risk of delay, it also confirms that Dellinger also was aware of that risk.
IV.
The judgment of the trial court is affirmed as to the negligent misrepresentation, breach of contract, and “detrimental reliance” claims. As to the “simple” negligence claim, the trial court’s judgment is reversed and the matter remanded for further proceedings not inconsistent with this opinion.
CIACCIO, J., concurs in part and dissents in part in which BARRY, J., joins.

. Roy also sued the ficticiously-named "ABC Insurance Company” as the insurer of Dellinger and/or Prudential. However, no actual insurer was ever made a defendant.

. Roy also argues that Dellinger was negligent in not sending Roy’s check and Polaris subscription application for delivery in New York on Saturday, December 29, 1984. Because we are remanding on the issue of “simple” negligence, this other argument by Roy can be dealt with below.