528 So.2d 637 (1988)
Cain DIXON, Plaintiff/Appellant,
v.
Jerald L. PERLMAN, Attorney, et al., Defendant/Appellee.
No. 19575-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
*638 Jo Ann Gines-Shepherd, Shreveport, for plaintiff/appellant.
Cook, Yancey, King & Galloway by Eskridge E. Smith, Jr., Shreveport, for defendant/appellee.
Before HALL, FRED W. JONES, Jr., and LINDSAY, JJ.
HALL, Chief Judge.
This is a legal malpractice action. The plaintiff is Cain Dixon. The defendant is Jerald L. Perlman, a Shreveport, Louisiana attorney. The basis for this malpractice action was the dismissal, on a plea of prescription, of a tort suit that Perlman filed on Dixon's behalf. See Dixon v. Houck, 466 So.2d 57 (La.App. 2d Cir.1985). The tort suit, alleging that the accident occurred on February 4, 1983, was filed on January 23, 1984. The plea of prescription was sustained on a finding that the accident happened on January 4, 1983.
Subsequent to the dismissal of his tort suit, Dixon filed suit against Perlman individually and the law firm of Walker, Feazel, Tooke, Grubb and Perlman.[1] Perlman individually filed a motion for summary judgment in which he contended that the handling of Dixon's tort suit had been transferred to him by another member of his firm; that he relied on information already in the file to determine the prescription date, and that he was not aware that the accident date contained in the file was wrong until the exception of prescription was filed by the defendants in the tort suit. The trial court granted Perlman's motion *639 for summary judgment and dismissed Dixon's legal malpractice action against Perlman. Dixon appealed and for reasons expressed herein, we reverse the judgment of the trial court and remand for further proceedings.
Facts
In early 1983, while incarcerated in the Ruston City Jail, Cain Dixon slipped and fell in the shower injuring his head, back and leg. He received emergency treatment in Ruston at Lincoln General Hospital and then was returned to the jail. An incident report prepared by police officers, Dixon's handwritten account of the accident, and the Lincoln General records all reflect that this accident occurred on January 4, 1983.
Dixon re-entered Lincoln General on January 24, 1983 for treatment of back and leg pain. He remained hospitalized there until January 28, 1983. In February another incident involving Dixon's legs occurred at the jail. This incident led to his being admitted to LSU Medical Center in Shreveport for tests in early March 1983.
Dixon's personal injury claim against the City of Ruston and Lincoln Parish officials was handled by at least two attorneys. Barry G. Feazel, a partner in the law firm of Walker, Feazel, Tooke & Grubb, stated in his deposition that he worked on Dixon's file from February, 1983 until at least August, 1983 and possibly longer. He stated that he did not know how Dixon came to be a client of the firm and that he did not remember who gave Dixon's file to him. He stated that the file had already been "set up" when he received it, that the prescription date was already on the file, and that interview notes were in the file. Feazel stated however that he did not know who had conducted the interviews. Feazel also testified that he never met Dixon and that he did not recall any conversations with Dixon. He stated that he assumed that he spoke with Dixon on the phone on one or two occasions but that he did not recall asking Dixon about the accident that occurred when he slipped and fell in the shower at the jail nor did he recall discussing with Dixon the legal significance of the date of the accident. He stated that he does not specifically recall Dixon telling him that the accident occurred on February 4, 1983. He did remember that Dixon contended that he had two separate accidents.[2]
Feazel testified in his deposition that Mr. Dixon contacted him regularly by correspondence and that on August 1, 1983, in response to a letter from Dixon inquiring whether pleadings had been filed, Feazel wrote him a letter describing the status of his case. It stated in part: "I will file your suit immediately." Feazel did not file suit immediately and eventually the responsibility for handling Dixon's file was shifted to Perlman. According to Feazel this transfer took place in either August, September or October of 1983.
Perlman testified in his deposition that he joined the Walker firm[3] in October 1983 and that within a week or ten days of joining the firm he was assigned responsibility for Dixon's file. He testified that there were several pages of handwritten notes in the file when he got it but that he did not recognize the handwriting. He stated that the file also contained some medical records from LSU Medical Center in Shreveport. One of these medical reports indicated that Dixon fell in the Lincoln Parish Jail on February 4, 1983. This report also indicates that Dixon injured his head and back in the fall, lost consciousness after the fall, and lost strength in his lower extremities on February 18. Another LSU Medical Center record dated March 4, 1983 on his admission to LSU Medical Center states that Dixon fell "three weeks ago".
The file also contained a letter dated March 14, 1983 from Dr. Gray, a physician *640 in Ruston, addressed to Feazel in response to a letter Feazel had written requesting information. The letter relates that Dixon slipped and fell while in jail receiving an injury to his back, describes out-patient treatment administered, later hospitalization at Lincoln General, discharge back to jail, another incident a week or so later, treatment for about a week, and then admission to LSU Medical Center. The letter contains no dates of the accident, hospitalization or treatment. Dr. Gray stated that the Sheriff's office had the most complete records, a medical record folder, and suggested that the attorney try to get records from the Sheriff's office and Lincoln General.
Perlman stated in his deposition that he did not conduct an investigation prior to filing suit and that he never at any time discussed the date of the accident with Dixon. He explained that he felt the information in the file was sufficient to state a cause of action and to file a law suit. Perlman stated that Dixon's name first appears on his time records on November 8, 1983. Perlman testified that he never spoke to Dixon in person but that he did speak to him on the phone on at least one occasion, that being on December 2, 1983, and that the subject of the date of the accident did not come up.
Perlman testified that he drafted a petition which alleged that the slip and fall accident occurred on February 4, 1983 and sent it to Dixon, who at that time was incarcerated in Angola, for verification. In a letter dated December 7, 1983 Perlman informed Dixon that the suit must be filed no later than February 4, 1984. Dixon signed the verification affidavit on December 16, 1983 and mailed the papers back to him. He then received a letter from Dixon dated December 19, 1983 which stated that a change (other than the date) needed to be made in the petition. The petition was corrected by Perlman on December 28, 1983 but was not filed until January 23, 1984.
Perlman testified that he became aware of the prescription problem in March, 1984 and that he withdrew as Dixon's counsel in May, 1984. Feazel withdrew from the Walker partnership in March, 1984 and the name of the firm was changed to Walker, Tooke, Grubb, Perlman and Lyons. In May 1985, Dixon filed suit against Perlman individually and the law firm of Walker, Feazel, Tooke, Grubb and Perlman. Dixon filed the suit in proper person but is now represented by counsel who enrolled in the district court prior to the granting of the motion for summary judgment.
Contentions of the Parties
Dixon contends that Perlman was negligent in failing to properly investigate his personal injury claim and in failing to file suit within the one-year prescriptive period. He alleges that Perlman knew that he had suffered head injuries and that he was incarcerated and therefore did not have access to records with which to verify the date of the accident. He contends that knowledge of these circumstances gave rise to a duty on Perlman's part to investigate his claim further and independently verify the date of the accident rather than relying on the LSU Medical Center records in the file to establish the date of the accident. He contends that the person who prepared the medical records did not have first hand knowledge of when the accident occurred and that Perlman should have realized this. Dixon also alleges that he expressed uncertainty about the date of the accident to Perlman and that this gave rise to a duty on Perlman's part to investigate the accident. He complains that Perlman failed to take witness statements and failed to make any notes on the case. Dixon also argues that he was promised in August, 1983 by Feazel that suit would be filed immediately and that Perlman could have filed suit sooner than he did with the information that he had. He contends that there was a failure to communicate information between Feazel and Perlman when the file was transferred and that the lack of a specific office procedure in the Walker firm for the transferring of files constituted negligence. Dixon also contends that the importance of the exact date of the accident was never made known to him.
*641 Perlman, on the other hand, contends that he did not have any indication that the date of Dixon's accident was January 4, 1983 rather than February 4, 1983 and that therefore he was justified in relying on the handwritten notes and the medical records contained in the file. Perlman denies that Dixon ever expressed to him any doubt as to the date that the accident occurred, and in support of this argument cites the fact that he wrote Dixon a letter telling him that the petition had to be filed by February 4 and that Dixon verified the petition without requesting that the accident date be changed.
Summary JudgmentApplicable Legal Principles
The sole purpose for the motion for summary judgment is to determine in advance of trial whether a genuine issue of material fact exists between the litigants. Indus. Sand and Abrasives v. L. & N.R. Co., 427 So.2d 1152 (La.1983). It is designed to dispose of frivolous demands and is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. Art. 966.[4] Cases which require a judicial determination of subjective facts, e.g., knowledge, motive, intent, good faith, are not appropriate for summary judgment. New South Advertising v. Krock-O-Cheese, Inc., 486 So.2d 1115 (La. App. 2d Cir.1986); Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983). Nor is summary judgment appropriate as a vehicle for the disposition of a case, the ultimate decision in which will be based on opinion evidence. Verrett v. Cameron Telephone Co., 417 So.2d 1319 (La.App. 3d Cir.1982) writ denied 422 So.2d 164 (La. 1982).
The party who moves for summary judgment has the burden of clearly showing that there is not a genuine issue of material fact in dispute. In determining if the mover has satisfied his burden, the court will closely scrutinize the pleadings, affidavits and documents of the mover and will resolve any reasonable doubt as to the existence of a genuine issue of material fact against the mover and in favor of trial on the merits. Indus. Sand & Abrasives v. L. & N.R. Co., supra. If the supporting documents presented by the moving party are insufficient to resolve all material fact issues, summary judgment must be denied. If sufficient, the burden shifts to the opposing party to present evidence showing that material facts are still at issue. LSA-C.C.P. Art. 967[5]; Sanders v. Hercules *642 Sheet Metal, Inc., 385 So.2d 772 (La.1980). The opposing party need not file affidavits unless the moving party has established both that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Dement v. Red River Valley Bank, 506 So.2d 1329 (La.App. 2d Cir.1987).
Legal MalpracticeApplicable Legal Principles
An attorney is obligated to exercise at least that degree of care, skill and diligence exercised by prudent attorneys practicing in his community or locality. He is not required to exercise perfect judgment in every instance but his license to practice and his contract for employment hold out to the client that he possesses certain minimal skills, knowledge and abilities. Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So. 2d 239 (1972); Gifford v. New England Reinsurance Corp., 488 So.2d 736 (La.App. 2d Cir.1986). The client is entitled to rely on the expertise and diligence of his attorney, particularly when the client has little experience or knowledge regarding the matter which the attorney was engaged to handle. In some cases, the duty of the attorney may extend to the protection of his client's own substandard conduct, carelessness, or error. Meyers v. Imperial Cas. Indem. Co., 451 So.2d 649 (La.App. 3d Cir.1984).
The extent of the attorney's duty to the client may depend in part on the client's particular circumstances and situation. In Louisiana State Bar Association v. Causey, 393 So.2d 88 (La.1980), citing Disciplinary Rule 6-101Failure to Act Competently, the court held:
"In Louisiana, the attorney-client contract is not an arm's length transaction, especially as between a compensated attorney and an incarcerated prisoner. The parties do not enter the bargaining process as equals. One comes as a member of a highly privileged profession; the other is stripped of most of society's freedoms, including the ability freely to communicate and seek information. For this reason, the Disciplinary Rules, which seek to justify the attorney's privilege of practicing law by imposing responsibility for the welfare of his client, must be scrupulously obeyed in this kind of relationship."
An attorney owes his client the duty of diligent investigation and research. Muse v. St. Paul Fire and Maine Insurance Company, 328 So.2d 698 (La.App. 1st Cir.1976).
Expert testimony is admissible to establish the standard of care exercised by attorneys in the locality. In certain cases the opinion of experts may be essential to prove the standard of care an attorney must meet. In other cases where the trial court is familiar with the standards of practice in its community or where the attorney's conduct obviously falls below any reasonable standard of care, the assistance of expert testimony may be unnecessary. Watkins v. Sheppard, 278 So.2d 890 (La. App. 1st Cir.1973); Muse v. St. Paul Fire and Marine Insurance Company, supra.
Conclusion
After closely scrutinizing the pleadings, depositions, and supporting affidavits of Perlman, we conclude that Perlman has failed to satisfy the threshold requirement of LSA-C.C.P. Art. 966 in that he has failed to show that there is no genuine issue of material fact and he has failed to show that he is entitled to judgment as a matter of law. The papers filed in support of the motion for summary judgment do not disclose that either Feazel or Perlman ever talked to plaintiff about the date of the accident. Instead both attorneys relied *643 on handwritten notes found in the file which indicated that the accident occurred on February 4. The record does not disclose who made the notes or that person's source of information. The notes do not show that Dixon provided the interviewer with the February 4th date. Although it seems likely that the notes were taken by an attorney in the Walker firm and that they were the result of a conversation with the plaintiff, who repeated the February 4 date to others in other communications, these facts are not established with certainty in the record. The reasonableness of Perlman relying on these notes of unknown origin, which admittedly contain an inaccurate date, to the exclusion of further independent investigation, is a genuine issue of material fact which can only be resolved at trial. Along these same lines, the source of the information concerning the accident date contained in the medical records in the file is not disclosed. The doctors preparing the report obviously had no personal knowledge of the date of the accident. The reasonableness of Perlman relying on this information is also at issue. Additional unresolved material issues of fact raised in this proceeding include:
(1) Plaintiff's physical and mental capacity.
(2) Plaintiff's awareness of the exact date of the accident and its importance.
(3) The means of verification that a prudent personal injury lawyer would use to ascertain an accident date prescription date.
(4) Whether mailing a multi-page petition which includes the date of the accident to a prisoner of limited education for verification is a reasonably reliable method of ascertaining or verifying the date of the accident.
(5) Whether plaintiff did in fact express uncertainty as to the date of the accident to Perlman.
In addition to there being unresolved and material factual issues, Perlman has not shown that he is entitled to judgment as a matter of law. Although an attorney may ordinarily be entitled to rely on his client's statement of the date of the accident in determining the prescriptive period within which suit must be filed, in certain cases the client's circumstances or other information which comes to the attorney's attention may give rise to a duty on the part of the attorney to further investigate the claim and to verify the date of the accident. See Watkins v. Sheppard, supra. The record in this case, pre-trial, does not disclose all of the facts and circumstances surrounding the communications between the client and attorneys as to the date of the accident. It cannot be determined pre-trial that the information conveyed to the attorneys by the client was given under circumstances that would indicate that the information was reasonably certain and reliable, negating any responsibility on the part of the attorney to verify the all-important information as to the date of the accident.
Here, what Perlman knew from the file passed on to him was that someone told the interviewer, who may or may not have been another lawyer in his firm, that the accident happened on February 4; that plaintiff was treated at LSU Medical Center in March and that the doctors there reported (obviously second-hand) that the accident happened on February 4, that the client was treated earlier by a Dr. Gray in Ruston and was hospitalized at Lincoln General on dates not disclosed; that there was more than one accident or incident; and that the client signed a petition which alleged that February 4 was the date of the accident. The reasonableness of defendant's conduct in relying on this information without further investigation cannot be determined by way of summary judgment. Expert testimony regarding the practice of prudent local attorneys who handle personal injury cases will be required to establish the applicable standard of care, skill and diligence and is important to the ultimate resolution of this case.
Here, a personal injury suit entrusted to an attorney by a client shortly after the accident was not filed timely and was dismissed as prescribed. This circumstance presents a prima facie case of negligence *644 and the burden of proof is on the attorney to establish that he was free from fault or neglect and that he exercised the appropriate degree of care, skill and diligence under the circumstances of this case.
Since there remains several genuine issues as to material fact and since Perlman has not clearly established that he was free of fault and therefore entitled to judgment as a matter of law, we find that the trial judge erred in granting the motion for summary judgment.
Decree
For the foregoing reasons, the judgment of the trial court granting the motion for summary judgment in favor of Perlman is reversed, and the case is remanded to the district court for further proceedings in accordance with law. Cost of the appeal and those incurred in connection with the motion for summary judgment are cast against defendant-appellee.
REVERSED AND REMANDED.
NOTES
[1] The trial court sustained an exception of insufficiency of citation and service of process in favor of the law firm on the grounds that the partnership no longer existed and gave plaintiff thirty days to amend his petition. Dixon much later filed an amending petition naming the same firm and New England Insurance Company as defendants. Exceptions were filed by these defendants which were pending at the time this appeal was taken. Dixon has not amended his petition to name the successor firm of Walker, Tooke, Grubb, Perlman and Lyons as a party nor has he amended his petition to name as defendants the individual former partners of the dissolved partnership or the individual partners of the successor firm other than Perlman. Therefore, the only defendant presently before this court on appeal is Perlman.
[2] Another member of the firm, Laurie Lyons, testified by deposition that when she was preparing a class action suit concerning the Ruston jail in May, 1983, she talked to Dixon and he told her he had fallen a couple of times in the jail and the first time was in February, 1983. She testified she did not discuss this with any other member of the firm.
[3] When Perlman joined the Walker firm it's name was changed to Walker, Feazel, Tooke, Grubb & Perlman.
[4] Art. 966. Motion for summary judgment; procedure

A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
B. The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
[5] Art. 967. Same; affidavits

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
If it appears to the satisfaction of the court at any time that any of the affidavits presented pursuant to this article are presented in bad faith or solely for the purposes of delay, the court immediately shall order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees. Any offending party or attorney may be adjudged guilty of contempt.