608 So.2d 1011 (1992)
Francis B. BARNETT
v.
Kaval Kaur Chandhok, Wife of/and Surjit SETHI, et al.
FEDERAL NATIONAL MORTGAGE ASSOC.
v.
Kaval Kaur Chandhok, Wife of/and Surjit SETHI.
Surjit SETHI
v.
Malcolm E. ZIEGLER, Diane Steward Wife of/and George S. Cross and Baldwin and Haspel.
Nos. 91-CA-1836, 91-CA-1837 and 91-CA-1838.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 1992.
Rehearing Denied December 16, 1992.
*1012 A.D. Freeman, New Orleans, for appellees Kaval Kaur Chandhok Wife of/and Surjit Sethi.
Charles K. Reasonover, Duris L. Holmes, Deutsch, Kerrigan & Stiles, New Orleans, for defendant-appellant Baldwin & Haspel.
Patrick D. Breeden, New Orleans, for defendant-appellant Malcolm E. Ziegler.
Trevor G. Bryan, Clare F. Jupiter, Bryan, Jupiter, Lewis & Blanson, New Orleans, for plaintiffs-appellees, third party defendants-appellants.
Before KLEES, CIACCIO and WARD, JJ.
KLEES, Judge.
In these consolidated cases, there are two separate sets of defendants, each appealing the portion of the trial court's judgment which affects them. First, attorney Malcolm Ziegler and the law firm of Baldwin & Haspel appeal the trial court's award of damages for legal malpractice in the amount of $21,036.21 plus attorneys's fees to plaintiffs Surjit Sethi and his wife, Kaval Kaur Chandhok. Second, defendants, William J. Jefferson, Andrea G. Jefferson, Bennie L. Jefferson, Trevor G. Bryan, Violet H. Bryan, James A. Gray, II, Ernestine S. Gray, Carl D. Robinson and Sandra L. *1013 Robinson [hereinafter "the Jefferson group"] appeal the trial court's judgment ordering them to indemnify plaintiffs in the amount of $67,628.93.
In the late 1970's and early 1980's, Surjit Sethi purchased multifamily rental properties located at 7720 and 7760 North Coronet Court and 6832 West Coronet Court in New Orleans. Sethi's brother purchased properties at 7770 and 7824 North Coronet Court and 6822 West Coronet court, which Sethi later managed for him. The notary on some of these purchases was Malcolm Ziegler, then a partner in the law firm of Baldwin & Haspel. Subsequently, Ziegler and Sethi became partners in a venture known as the Ambassador Hotel Limited Partnership, from which Sethi withdrew in 1981.
In early 1983, Sethi was managing the six Coronet Court properties and was losing between $6,000 and $7,000 per month. Because of these losses and Sethi's absence from New Orleans, he decided to sell the properties and approached Ziegler for assistance in selling them. Ziegler, who apparently had a buyer in mind, told Sethi he would sell the properties for him and get him $20,000. Sethi executed a written power of attorney on behalf of himself and his brother to Ziegler on January 15, 1984.
Although the contemplated sale fell through, Ziegler arranged for someone to manage the properties while he looked for a new purchaser. Any net funds from the property management were forwarded to Ziegler, who deposited them in a Baldwin & Haspel trust account and made the necessary mortgage payments. On March 1, 1984, the property at 7720 North Coronet Court was transferred to George Cross, who then exchanged it with Seaborn Wicker.
Ziegler sent Sethi $10,000 of the promised $20,000. The Jefferson group became interested in purchasing all six properties. Ziegler asked Sethi for $32,892.30 to bring the mortgages up to date in order to close the sale to the Jefferson group, which amount Sethi sent to him. The Jefferson group acquired the properties by sale and assumption on August 29, 1984. They in turn transferred the properties to a partnership, New Sunbelt Investment Company ["Sunbelt"], on August 31, 1984. All of the transfers, namely, Sethi to Cross, Cross to Wicker, Wicker to the Jefferson group and the Jefferson group to Sunbelt were made without written approval of the mortgagee (Federal National Mortgage Association or "FNMA") or its agents (Laurance Eustis Mortgage Corporation or Verex Assurance, Inc.) in violation of each mortgage's pact de non alienando clause and without payment of the fee usually collected by the mortgagee before approving transfers.
The Jefferson group and/or Sunbelt collected rentals, held deposits, paid the mortgage and managed the properties through a management company. In early 1985, the Jefferson group began missing its payments on certain mortgages. On October 14, 1985, Francis B. Barnett, a mortgagee on 7760 North Coronet, filed suit against the Jefferson group and the Sethi's for nonpayment of the note on that property. On April 4, 1986, the FNMA instituted foreclosure proceedings on 7720 North Coronet, citing both the failure to pay the mortgage note from July 1, 1985 forward and the unauthorized transfer to the Jefferson group. Eventually, 7720 North Coronet was seized and sold, and the mortgagee's agent, Verex Assurance, Inc., obtained a deficiency judgment against the Sethi's in the amount of $67,638.93 plus interest of 13% per annum from June 6, 1986. This judgment has not yet been executed.
On December 12, 1986, the Sethi's filed this suit against Ziegler and Baldwin & Haspel seeking damages for legal malpractice and an accounting. The Sethi's also filed third party complaints against Ziegler and Baldwin & Haspel in the Barnett and FNMA lawsuits. The three suits were later consolidated, and trial was held before the district court without a jury in December of 1990.
On January 24, 1991, the district court rendered judgment in favor of the Sethi's against Ziegler and Baldwin & Haspel "jointly, severally and in solido" in the sum *1014 of $21,036.21, with interest at the legal rate and attorney's fees of $12,000. The court also awarded the Sethi's damages of $67,628.93 (the amount of the deficiency judgment) against the Jefferson group. From this judgment, Ziegler and Baldwin & Haspel have appealed suspensively, and the Jefferson group has appealed devolutively.
Defendant Baldwin & Haspel makes four alternative arguments on appeal: (1) Baldwin & Haspel is not liable for the actions of Ziegler; (2) plaintiffs' legal malpractice claim is prescribed; (3) plaintiffs failed to prove malpractice in the lower court; and (4) the award of $12,000 in attorney's fees to plaintiffs is improper. Defendant Ziegler also urges prescription and the impropriety of the award of attorney's fees. Additionally, he argues that he was the indefinite mandatary of Sethi, and as such he cannot be held liable for anything he did with good intentions. In the second appeal, the Jefferson group contends that they are not liable to the Sethi's because the Jefferson group did not receive proper notice of the foreclosure proceedings and because the foreclosure was partly due to Sethi's own fault. We will address each argument in turn.
Baldwin & Haspel first contends that although Ziegler was a partner in the firm during the time he handled Sethi's property, the firm is not liable for Ziegler's actions. The trial court rejected this contention, noting that Ziegler communicated with Sethi on Baldwin & Haspel stationery, made mortgage and other payments for Sethi with checks drawn on Baldwin & Haspel's escrow account, used the Baldwin & Haspel secretarial staff to prepare documents for the various transactions involved, and never represented to anyone that he was acting other than as a partner of Baldwin & Haspel. Based on this evidence, we find no manifest error in the factual conclusion of the trial court that Ziegler acted as a partner of Baldwin & Haspel, which is therefore liable for his actions.
The primary argument made by both Ziegler and Baldwin & Haspel is that the trial court erred in failing to hold that plaintiffs' case had prescribed. The prescription for legal malpractice, like other delictual actions, is one year. La.Civ.Code art. 3492. However, the trial judge applied the ten year prescription used in breach of contract actions because he found that Ziegler had guaranteed a result to Sethi, namely, the sale of the properties with a net return to Sethi of $20,000. When an attorney breaches an express warranty of result, an action for breach of contract arises. Succession of LaSalle v. Clark, 503 So.2d 694, 696 (La.App. 3d Cir.1987), writ denied, 505 So.2d 1146 (La.1987); Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995, 998 (La.App. 1st Cir.1983), writ denied, 431 So.2d 773 (La.1983). Sethi testified that Ziegler promised to sell the properties and give him $20,000. Ziegler denied making any such representation, and testified that the $20,000 related to the Ambassador Hotel Limited Partnership. The written power of attorney signed by Sethi merely authorizes Ziegler to act as Sethi's representative regarding the sale of the properties, with no restriction as to sale price.
We view this issue as a credibility question resolved in favor of Sethi by the trial judge. As such, we find no manifest error in the trial court's determination that Ziegler guaranteed Sethi the sum of $20,000. Therefore, plaintiffs' action has not prescribed because the ten year prescriptive period is applicable.
Alternatively, defendants argue that the three elements of legal malpractice, namely the existence of an attorney-client relationship, negligent representation by the attorney and a loss to the client caused by this negligence (See Evans v. Detweiler, 466 So.2d 800 (La.App. 4th Cir. 1985)), were not proved by the plaintiffs in this case. We disagree. The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists. Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567, 571 (La.1986). In the instant case, Sethi clearly viewed Ziegler as his attorney, and not merely as a sort of real estate agent. Moreover, Ziegler stated in his deposition that he represented *1015 Sethi with regards to the properties "as an attorney." Under the circumstances, we agree with the trial judge's conclusion that an attorney-client relationship was proved.
The existence of the other two elements of malpractice, which are negligence and damages, is obvious from the facts in the record. All of the transfers of the properties were done without obtaining the required written approval of the relevant mortgagees in direct violation of the pact de non alienando clause contained in each mortgage. Obtaining the proper transfer documents was clearly the responsibility of Ziegler as the Sethi's attorney and their sole representative at the sales. Because of Ziegler's neglect, the Sethi's were put in the position of being sued by the mortgagees, having to defend those lawsuits, and ultimately, having a deficiency judgment rendered against them. Accordingly, there is no question that the plaintiffs have shown the requisite elements of legal malpractice.
On his own, defendant Ziegler argues that he was given an indefinite mandate by Sethi, and that as an indefinite mandatary, he cannot be held liable for what he did with good intentions. See La. Civ.Code arts. 2995 and 3006. This argument is without merit. The written power of attorney given to Ziegler was not an indefinite mandate, but rather a restricted authority to sell the properties in question. In addition, it was not proved that the mandate was gratuitous, which is a requirement for these articles to apply. See La.Civ.Code art. 2991.
We do find merit in defendants' contention that the trial judge erred in awarding attorney's fees of $12,000 to plaintiffs. We agree with defendants that plaintiffs are not entitled to attorney's fees in the instant case because, in this state, attorney's fees are not recoverable unless authorized by law, statute, or contract. Huddleston v. Bossier Bank & Trust Co., 475 So.2d 1082 (La.1985). Plaintiffs rely on Ramp v. St. Paul Fire and Marine Ins. Co., 263 La. 774, 269 So.2d 239 (1972), in which the Supreme Court allowed the recovery of attorney's fees in a legal malpractice case wherein the attorneys had negligently handled a succession, forcing their clients, the heirs, to engage in litigation to recover their unencumbered legitime. We distinguish Ramp from the instant situation because in Ramp, the attorney's fees awarded were not incurred in the malpractice suit, but rather were fees incurred by plaintiffs in hiring another attorney to file suit to recover their legitime. We do not agree with plaintiffs' suggestion that Ramp stands for the proposition that attorney's fees are recoverable in all legal malpractice actions. Therefore, in the absence of specific statutory or contractual authority, the trial court erred in awarding $12,000 is attorney's fees to plaintiffs herein.
At various points in their briefs, both defendants Baldwin & Haspel and Ziegler complain that the amount of damages awarded was too high. Conversely, plaintiffs contend that the amount of damages was insufficient. In reviewing the record, we find the trial judge's award to be reasonable. The trial judge found that of the $32,892.30 which the Sethi's paid Ziegler before the sale to the Jefferson group, only $21,856.09 was properly accounted for in the record. He therefore awarded the Sethi's the remaining $11,036.21 which was not satisfactorily accounted for, plus the $10,000 which remained unpaid on Ziegler's original promise to pay Sethi $20,000. Considering the complex facts presented in this case, we cannot say that the trial judge's computation of $21,036.21 was manifestly erroneous.
Finally, we turn to the appeal by the Jefferson group. The Jefferson group argues that they should not have been held liable for the amount of the deficiency judgment obtained against the Sethi's. Their argument is primarily based on the fact that, although they had assumed the mortgages in writing, the Jefferson group received no official notice of the foreclosure proceedings. Rather, notice was sent to the Sethi's, who then through Ziegler attempted to notify the Jefferson group by several certified letters. At trial, there was conflicting evidence as to whether *1016 or not any member of the Jefferson group actually received the letters. The trial judge apparently believed there was actual notice, and based his opinion on that fact. The record contains evidence that at least one letter was signed as received by Edith White, an employee of the Jefferson group. We therefore do not find the trial court's conclusion to be manifestly erroneous.
The Jefferson group also argues that they cannot be liable to indemnify the Sethi's because the Sethi's damages are partly due to their own fault. However, the foreclosure suit was a result of the Jefferson group's failure to pay the mortgages it had expressly assumed. The Jefferson group was also aware that the mortgagee had only given verbal approval of the transfer, whereas written approval was necessary. Under those facts, we find that the foreclosure was the fault of the Jefferson group, not of the plaintiffs. Therefore, the judgment against the Jefferson group was proper.
Accordingly, for the reasons given, we amend the judgment of the district court to delete the award of $12,000 in attorney's fees to plaintiffs. In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.