740 So.2d 702 (1999)
IRL R. SILVERSTEIN, PLC., Irl R. Silverstein, PLC, Pension Benefit Plans, The R.C. Trust, and The P.L. Trust
v.
Paul L. JUAREZ.
No. 98-CA-1322.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1999.
Rehearing Denied June 28, 1999.
Writ Denied November 5, 1999.
*703 Albert Dale Clary, David L. Guerry, Jennifer L. Vosburg, Long Law Firm, L.L.P., Baton Rouge, Louisiana, Attorneys for Defendant-Appellant, Paul L. Juarez, Jr.
Irl R. Silverstein, Gretna, Louisiana, Attorney for Plaintiffs-Appellees, Irl R. Silverstein, P.L.C., Irl R. Silverstein, R.C. Trust, P.L. Trust, Robert A. Caplan and Lewis & Caplan, a P.L.C.
Court composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr. and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This is an appeal from a judgment against a guarantor of certain promissory notes, finding him liable for his virile share of the balance due, plus interest and attorney's fees. Defendant has appealed. We affirm.
Paul Juarez, defendant, was a member of Academy Mortgage Company, L.L.C., together with Irl R. Silverstein, Robert A. Caplan and Peter Lewis. Juarez served as manager of Academy until he was terminated from the position on September 24, 1996. Between 1985 and 1996 Juarez signed twelve promissory notes as guarantor, executed in favor of Silverstein, Caplan, Lewis or trusts of which they were trustees (Irl R. Silverstein, PLC, Pension Benefits Plans; the R.C. Trust; the P.L. Trust). On each of the notes which Juarez cosigned, at least one and usually two of the other partners/members also cosigned.
On September 24, 1996 Juarez was terminated from his position as manager of Academy and suit was filed against him on *704 behalf of Academy alleging mismanagement and breach of fiduciary duty (Academy Mortgage Company, L.L.C. v. Juarez, No. 499,090, 24th Judicial District Court, appeal filed as No. 99-CA-963 in this Court). Juarez impleaded Silverstein and Caplan in that suit, raising allegations of legal malpractice against them.[1]
On May 20, 1997 the payees on the promissory notes filed the instant suit (Silverstein v. Juarez, No. 509,297, 24th Judicial District Court, appeal filed as No. 99-CA-1322 in this Court) to collect on the promissory notes on which Juarez had signed as guarantor. During course of the litigation two of the notes mentioned in the original petition were determined to have been satisfied. The remaining notes were as follows:

Payee Date Amount
Irl R. Silverstein PLC 09/17/84 20,000.00
Pension Benefit Plans
Robert A. Caplan 05/31/85 100,000.00
Pete Lewis 08/05/85 50,000.00
Irl R. Silverstein PLC 09/09/85 20,000.00
Pension Benefit Plans
Robert A. Caplan 09/20/85 25,000.00
Robert A. Caplan 11/26/85 40,000.00
Robert A. Caplan 12/03/85 25,000.00
Pete Lewis 03/20/86 50,000.00
Robert A. Caplan 02/29/88 10,000.00
Pete Lewis 07/1/96 100,000.00

(All the notes payable to Robert Caplan were indorsed over to the R.C. Trust and all the notes payable to Pete Lewis were indorsed over to the P.L. Trust.)
Juarez filed a third-party demand in this suit seeking security and indemnity from Academy and a reconventional demand seeking contribution from Silverstein, Caplan and Lewis. He also raised allegations of legal malpractice against Silverstein and Caplan.
Juarez sought consolidation of the two suits in the district court, but his motion to consolidate was denied. Each case thereafter proceeded to trial in separate divisions of the district court.
In the suit by Academy Mortgage against Juarez, the legal malpractice claims were rejected in the district court as prescribed. This court upheld that ruling on appeal, finding the causes of action had prescribed due to peremption. Academy Mortgage Company, L.L.C. v. Juarez, No. 98-963 (La.App. 5 Cir. 6/1/99), 740 So.2d 708.
In the case now before us, Silverstein and Caplan brought an exception of prescription as to the legal malpractice claims. On March 9, 1998 the trial court granted the exception regarding all the claims except those pertaining to the 1996 promissory note. On April 24, 1998 the court granted the exception of prescription as to the 1996 note, thus dismissing all the legal malpractice claims.
On May 7, 1998 the court rendered judgment on the merits of the main action, finding Juarez liable for his virile share of each note and awarding interest of 12% and attorney's fees of 20% on each note, plus casting Juarez for all costs. Juarez' motion for new trial was denied.
Juarez appeals the judgment of April 24, 1998 and the judgment of May 7, 1998. On appeal he asserts the trial judge erred in dismissing his legal malpractice claims and in finding him liable for his virile share on the promissory notes when no effort was made to pursue the maker or the other guarantors.

PRESCRIPTION/PEREMPTION
Juarez contends the court erred in granting the exception of prescription as to his claim regarding lack of proper legal advice on the 1996 promissory notes because, prior to ruling, the court heard evidence to determine whether there was an attorney-client relationship regarding that promissory note. Juarez contends that the court should not rule on an exception *705 of prescription without first determining the merits of the claim.
We note first that it is peremption rather than prescription that is applicable to legal malpractice claims. La. R.S. 9:5605 governs actions for legal malpractice. It provides that any action for damages against an attorney at law, whether based upon tort, breach of contract, or otherwise, arising out of an engagement to provide legal services must be filed "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered." La. R.S. 9:5605(A). In all events, however, even as to actions filed within one year from the date of such discovery, "such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect." Id. The statute specifies that the one-year and three-year periods of limitation are peremptive periods and thus may not be renounced, interrupted, or suspended.
The question of whether a cause of action is prescribed is considered separate and apart from other issues presented by a particular case. Dozier v. Ingram Barge Co., 96-1370 (La.App. 4 Cir. 1/28/98) 706 So.2d 1064, 1066.
Irl Silverstein testified that in the ten years prior to trial of this matter he handled several real estate transactions for Mr. and Mrs. Juarez. The last time he handled a matter for them was in April 1996, a real estate refinancing transaction in which he did a title examination, prepared closing documents, and handled the closing. He was never retained to provide advice or counsel regarding the execution of the promissory notes and never gave them legal advice on such. There were no written employment contracts. They did have a joint venture in which they owned real estate together. Silverstein was also the attorney for Academy Mortgage, but his duties consisted mostly of handling collections.
Robert Caplan testified that he was also an original partner in Academy, but generally did no legal work for the company. He handled two cases for the Juarez family. There were personal injury suits which were handled and resolved in 1990 and 1996. The notes were unrelated to these cases. At the time of trial Caplan was no longer representing the Juarez family in any capacity. He was never retained to advise them about the notes. The second tort suit, which involved an injury to defendants' daughter, was settled in September of 1996. On September 17, 1996, he filed tutorship proceedings on behalf of the Juarezes' daughter. Caplan withdrew from representation on October 18, 1996.
Paul Juarez testified that he had known Silverstein for about 25 years and was his business partner for 20 of those years. Silverstein was the closing attorney on a number of real estate transactions involving the Juarezes personally. The documents admitted at the trial indicate that Silverstein acted as notary on several sales and/or mortgages. Those documents include a refinancing arrangement in which Silverstein was the notary on the collateral mortgage and mortgage note and is shown on the closing statement as attorney; no fee was designated for Silverstein on this statement. Although there were no written contracts, on more than half of these transactions Silverstein was paid "a couple of hundred dollars in cash."
Juarez stated that as manager of and partner in Academy, he relied on the legal advice provided by Silverstein. He believed that Silverstein was his attorney in business matters and Caplan in personal injury matters. There were no written contracts with Silverstein, but there was one with Caplan.
Juarez testified that he and Silverstein had discussed the "effect of his [Juarez's] signature" on the promissory notes in 1991-1993. He did not seek legal advice from Silverstein in 1996 relative to the *706 note in question. In connection with the earlier notes, Silverstein had previously told him that the debts would be forgiven, as had been done with Mr. Lewis' brother, and Juarez continued to rely on those representations in 1996.
The trial court found there was no legal relationship between the parties, yet granted the exception of prescription. The court found that, while there may have been some legal representation of the mortgage company, there was no such relationship between the parties themselves.
The three elements of a legal malpractice claim are the existence of an attorney-client relationship, negligent representation by the attorney, and loss to the client caused by that negligence. Finkelstein v. Collier, 93-999 (La.App. 5 Cir. 4/14/94) 636 So.2d 1053, 1058; Barnett v. Sethi, 608 So.2d 1011, 1014 (La.App. 4th Cir.1992), writs denied, 613 So.2d 993 (two cases), 613 So.2d 994 (La.1993). The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists. Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567, 571 (La. 1986); Finkelstein, supra.
The only malpractice claim on appeal is that related to the 1996 note. However, Juarez himself testified that neither Silverstein nor Caplan gave him advice as to that note. He simply followed the procedure that had been done several years before when he cosigned the earlier notes.
We find no manifest error in the trial court's conclusion that there was no attorney-client relationship between Silverstein and any of the defendants arising out of the 1996 note. Accordingly, he has no right of action for legal malpractice. The exception of prescription (peremption) is inapplicable under the circumstances, but the trial court correctly dismissed the claim for legal malpractice.

LIABILITY ON PROMISSORY NOTES
Juarez asserts the trial court erred in trying the merits of the suit because his motion to traverse the security posted by Academy had not been heard. Alternatively, he asserts the court erred in finding him liable because the debt had been remitted. He contends that because plaintiffs presented no evidence they attempted first to collect the debt from Academy, the debt was remitted and guarantors could not be found liable.

Motion to Traverse Security
La. C.C. art. 3053 provides,
A surety, before making payment, may demand security from the principal obligor to guarantee his reimbursement when:
(1) The surety is sued by the creditor;
* * *
The principal obligor may refuse to give security if the principal obligation is extinguished or if he has a defense against it.
La. C.C. art. 3054 states,
If, within ten days after the delivery of a written demand for the security, the principal obligor fails to provide the required security or fails to secure the discharge of the surety, the surety has an action to require the principal obligor to deposit into the registry of the court funds sufficient to satisfy the surety's obligation to the creditor as a pledge for the principal obligor's duty to reimburse the surety.
During the course of the litigation Juarez had made written demand on Academy for security, but Academy posted none. Approximately three weeks prior to the date set for trial of the merits, defendant filed a motion to require security. After a hearing the trial court granted the motion.
Five days prior to the trial date Academy deposited certain receivables as security. The next day Juarez filed a motion to traverse security, asserting the security deposit was insufficient because the face amount of the receivables deposited was not sufficient to cover interest, attorneys' *707 fees or court costs; the face amount on some of the accounts was further depleted by being subject to liens for attorneys' fees and/or costs; the deposit consisted largely of worthless or dead accounts; and the face amount on the balance did not necessarily reflect the balance due on the particular account. Attached to the motion to traverse was an order in blank, to permit the trial judge to set the motion for hearing. However, that order was not signed until May 7, 1998, at which time the court set the hearing on the motion to traverse for June 19, 1998.
Meanwhile, on April 28, 1998, the date set for trial, the matter proceeded to trial on the merits. Defendant made no objection prior to or during the trial to the court's hearing the merits without having decided the motion to traverse.
On appeal, however, defendant-appellant contends the trial court erred in permitting the matter to go to trial on the issue of his obligation on the notes, before hearing his motion to traverse the security posted by Academy Mortgage.
We find no merit to that issue. Defendant's failure to raise it prior to the trial must be considered to be a waiver of any right he may have had to postpone trial pending determination of his traversal of the security deposited.

Liability on Notes
Under La. R.S. 10:3-419(a), Juarez' signature on the promissory notes made him an accommodation party. An accommodation party who pays the instrument is entitled to reimbursement, subrogation, contribution, and indemnification in accordance with the rules of suretyship. La. R.S. 10:3-419(e).
A surety is liable to the creditor for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity. La. C.C. Art. 3045. An obligee may demand the whole performance from any of his solidary obligors. La. C.C. Art. 1795. Among solidary obligors, each is liable for his virile portion. La. C.C. Art. 1804.
The surety may assert against the creditor any defense to the principal obligation that the principal obligor could assert except lack of capacity or discharge in bankruptcy of the principal obligor. La. C.C. Art. 3046. A surety has the right of subrogation, the right of reimbursement, and the right to require security from the principal obligor. La. C.C. Art. 3047. The surety who pays the principal obligation is subrogated by operation of law to the rights of the creditor. La. C.C. Art. 3048.
"[A]s between the creditor and the solidary surety, the obligations of the surety are governed by the rules of solidary obligors.... Among the co-obligors, however, bound in solido, the legal relationships may be governed by the rules of suretyship." Louisiana Bank & Trust Co., Crowley v. Boutte, 309 So.2d 274, 278 (La. 1975); Aiavolasiti v. Versailles Gardens Land Development Co., 371 So.2d 755, 758 (La.1979).
Under these statements of law, we conclude that in this case the holders of the notes were entitled to demand payment from the defendant. As noted above, the plaintiffs sought only Juarez's virile share as guarantor. Accordingly, Juarez must pay his virile share and his recourse must be against Academy Mortgage, maker of the notes.[2]

FRIVOLOUS APPEAL
In their brief appellees assert that Juarez's appeal is frivolous and that they should be awarded damages against him. However, they failed to appeal or answer *708 the appeal and therefore cannot recover damages for frivolous appeal.
Appellees also assert that sanctions should be leveled against appellant for various statements in his brief which they assert are demeaning to the district court as well as the other parties in the suit. However, they failed to file a motion to strike the contested statements. We have reviewed the statements mentioned and, while they manifest some discourtesy to both the trial judge and to plaintiffs, we do not find them so egregious as to warrant imposition of sanctions under the circumstances.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] Silverstein, Caplan and Lewis are all attorneys. Juarez is not an attorney.
[2] Although Juarez filed a third-party demand against Academy for indemnification, the record before us shows no ruling on that demand. It does not appear from the trial transcript that Academy's liability to indemnify Juarez was at issue at that hearing. Apparently the third party demand is still pending.